**WEAVER BROTHERS, INC., Appellant,**

**v.**

**Patricia CHAPPEL, Special Administrator of the Estate of Eberhardt Hantsch, Appellee.**

**No. 7603.**

Supreme Court of Alaska.

June 29, 1984.

Mark A. Sandberg, Camerot, Sandberg & Hunter, Anchorage, for appellant.

Nelson P. Cohen, Anchorage, for appellee.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This case raises the issue of whether untimely notice of an accident to an insurer is per se sufficient to relieve the insurer from any obligation to the insured. If not, we must decide who has the burden of demonstrating that the delay prejudiced the insurer and whether the burden has been met in this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Eberhardt Hantsch, Marna Jill Hantsch and Jonathan Hantsch were killed on September 4, 1974, when their Volkswagon van, driven by Eberhardt, collided with a tractor-trailer driven by Thomas Todd, an employee of Weaver Brothers, Inc. (hereafter WBI). Eberhardt Hantsch was insured by the Insurance Company of British Columbia (hereafter ICBC).

Sometime after the accident a settlement of $85,000 was negotiated between the heirs of Eberhardt Hantsch and WBI, Todd and Insurance Company of North America (hereafter INA), one of WBI's insurance companies. A personal representative was appointed for Eberhardt's estate to accept the wrongful death settlement. The superior court ordered payment to the estate on November 4, 1975. The heirs of Eberhardt's estate subsequently released WBI, Todd, and INA from any and all claims arising from the September 4, 1974, accident. However, WBI, Todd and INA did not release the estate from liability. The estate was closed in 1979.

On October 20, 1975, a wrongful death action was filed against WBI on behalf of the estates of Marna Jill Hantsch and Jonathan Hantsch. WBI filed an answer in November 1975 in which it asserted, inter alia, that the negligence of Eberhardt caused the accident. Later, in 1978, WBI moved to amend the answer to assert a third-party claim sounding in contribution against the estate of Eberhardt. This motion was denied. The case went to trial in 1979 and a jury verdict was returned for the estates of Marna Jill and Jonathan. WBI appealed the verdict, but settled the matter for $575,000 while the appeal was pending.

WBI filed a claim for contribution against the estate of Eberhardt Hantsch on October 27, 1980. Patricia Chappel was appointed as special administrator for the estate on November 5. A complaint for contribution already had been filed against her on October 10, prior to her appointment.

Chappel notified ICBC of the contribution action on November 11, 1980. This was the first notice to ICBC of the automobile accident of September 4, 1974. On November 28, 1982, Chappel moved for a summary judgment stating that "the only source for relief herein is from an insurance policy which does not provide coverage." There was no policy coverage since the notice was untimely and the delay was unreasonable, unjustifiable and prejudicial. The superior court granted the summary judgment on February 23, 1983, and this appeal followed.

There are three questions before us in this appeal: 1) Does untimely notice per se relieve the insurer from any obligation under the insurance policy? 2) If not, who has the burden of demonstrating prejudice to the insurer as a result of the delay? 3) Has sufficient prejudice been demonstrated in this case so that summary judgment was proper?

## II. EFFECT OF UNTIMELY NOTICE

ICBC was first notified of the automobile accident over six years after the date of the accident. Eberhardt Hantsch's insurance policy provided the following as to notice:

6.24 Each insured shall promptly give to the corporation written notice, with all available particulars, of any accident involving loss or damage to persons or property in which he, or any motor-vehi-

cle owned or driven by him, has been involved, and of any claim made on account of any such accident; . . .

The policy also stated that a breach of any condition entitles the insurance company to refuse to pay any indemnity. There is no question as to the lateness of the notice in this case but we must decide whether the delay per se relieves the insurance company from payment under the policy.

We note first that interpretation of insurance provisions is not controlled directly by usual contractual principles. Insurance policies may be considered contracts of adhesion due to the inequality in bargaining power. In *Stordahl v. Government Employees Insurance Co.*, 564 P.2d 63, 66 (Alaska 1977), we stated that an insurance provision "should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language." (Footnote omitted). *See also Guin v. Ha*, 591 P.2d 1281, 1284–85 (Alaska 1979).

Traditionally, courts have construed prompt notice provisions as conditions precedent to liability under an insurance policy. 2 R.H. Long, Law of Liability Insurance, § 13.03 (1982). The insurer is not liable until the notice requirement is met. If prompt notice is not given then liability under the policy has not matured. This strict contractual approach has often been tempered by allowing exceptions where the insured's delay is excused. *Sanderson v. Postal Life Insurance Co.*, 87 F.2d 58 (10th Cir.1936) (16-year delay excused due to party's ignorance as to existence of coverage); *Middlesex Mutual Insurance Co. v. Wells*, 453 F.Supp. 808 (N.D.Ala.1978) (1½-year delay excused when plaintiff did not know that father's automobile insurance covered son's motorcycle accident); *Suire v. Combined Insurance Co. of America*, 290 So.2d 271 (La.1974); *Thomp-*

*son v. Equitable Life Assurance Society*, 447 Pa. 271, 290 A.2d 422 (1972).

The modern trend rejects the above approach and considers prejudice to the insurer as the material factor. *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977); *Pulse v. Northwest Farm Bureau Insurance Co.*, 18 Wash.App. 59, 566 P.2d 577 (1977). This trend is consistent with the purpose behind prompt notice provisions. The purpose has been well summarized in 8 J. Appleman, Insurance Law and Practice § 4731, at 2–5 (Rev. ed. 1981):

> The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. . . . And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation. [Footnote omitted].

In short, the notice requirement is designed to protect the insurer from prejudice. In the absence of prejudice, regardless of the reasons for the delayed notice, there is no justification for excusing the insurer from its obligations under the policy. We recognize the strong societal interest in preserving insurance coverage for accident victims so long as the preservation is equitable for all parties involved.[1]

### III. BURDEN OF DEMONSTRATING PREJUDICE

Jurisdictions which have treated prejudice as the material factor still disagree as to who has the burden of proving existence or lack of prejudice. Some jurisdictions require the insured to prove that the untimely notice did not prejudice the company[2] while others place the burden of

---

1. *See Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193, 198 n. 8 (1977).

2. *Dairyland Ins. Co. v. Cunningham*, 360 F.Supp. 139, 141 (D.Colo.1973); *Artukovich v. St. Paul-Mercury Indemnity Co.*, 150 Cal.App.2d 312, 310

P.2d 461, 469 (1957) (untimely notice raises presumption of prejudice and insured has burden of rebutting); *Tiedtke v. Fidelity & Casualty Co.*, 222 So.2d 206, 209 (Fla.1969); *Calhoun v. Western Casualty & Surety Co.*, 260 Wis. 34, 49 N.W.2d 911, 912 (1951).

demonstrating prejudice on the insurer.[3] We conclude the burden should be on the insurer. Information regarding prejudice is generally more readily available to the insurer than the insured. The insurer is in a better position to demonstrate that its ability to investigate, defend or settle a claim has been impaired.

We hold that in a case of untimely notice to an insurer, the insurer must prove that it has actually been prejudiced by the delay before its liability is extinguished.

## IV. PREJUDICE TO ICBC

Generally proof of prejudice to the insurer is a question of fact. *Pulse v. Northwest Farm Bureau Insurance Co.,* 18 Wash.App. 59, 566 P.2d 577, 579 (1977). A summary judgment may only be granted if the proponent of the motion shows that there is no genuine issue of material fact and also that he is entitled to judgment as a matter of law. *Wickwire v. McFadden,* 576 P.2d 986, 987 (Alaska 1978); *Whaley v. State,* 438 P.2d 718, 719 (Alaska 1968). The estate and ICBC argue that the summary judgment motion was properly granted since they proffered undisputed evidence of prejudice. Since WBI did not respond to the allegations of prejudice, ICBC claims that Alaska Civil Rule 56(e) supports the granting of the motion.[4]

ICBC claims that it was prejudiced in three ways: 1) opportunities to investigate have been lost; 2) opportunities to negotiate and settle have been lost; and 3) opportunities to defend have been lost. Had ICBC met its initial burden of showing that there was no genuine issue of material fact, WBI's failure to respond with affidavits or other evidence would justify the summary judgment. However, ICBC did no more than to allege prejudice. It introduced no evidence in support of its claims.[5] For instance there was no evidence that ICBC customarily investigated or settled similar claims.[6] This case is very similar to that before the Washington court in *Oregon Automobile Insurance Co. v. Salzberg,* 85 Wash.2d 372, 535 P.2d 816 (1975). There, the court concluded that the summary judgment should not have been granted, since the "respondent alleged that it incurred prejudice by Salzberg's actions, but there is nothing in the record supportive of this contention." *Id.* at 819.[7]

Since ICBC did not meet its initial burden of showing that there were no genuine issues of material fact the summary judgment motion should have been denied regardless of whether WBI failed to respond to the motion with affidavits or other evidence. *See Jacobsen v. State,* 89 Wash.2d 104, 569 P.2d 1152, 1155 (1977).

The judgment is REVERSED and REMANDED.

---

3. *LaPlace v. Sun Ins. Office, Ltd.,* 298 F.Supp. 764, 767 (D.V.I.1969); *Lindus v. Northern Ins. Co.,* 103 Ariz. 160, 438 P.2d 311, 315 (1968); *Brakeman v. Potomac Ins. Co.,* 371 A.2d at 198; *Pulse v. Northwest Farm Bureau Ins. Co.,* 18 Wash.App. 59, 566 P.2d 577, 579 (1977).

4. Alaska Civil Rule 56(e) reads in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

5. *See Ratcliff v. Security Nat'l Bank,* 670 P.2d 1139, 1142 (Alaska 1983) (To discharge burden of showing no material issues of fact, movant must submit admissible evidence in support of its version of the facts).

6. Indeed, ICBC's examiner—a person responsible for any claims of excess of $25,000 originating out of the Province of British Columbia—was instructed by ICBC counsel not to answer any questions regarding handling claims arising in the United States.

7. WBI also sought to obtain from ICBC the outside date ICBC would have considered notice in compliance with the policy. ICBC declined to respond on the ground that it was not a party to the lawsuit.