**Trudy TUSH, Appellant,**

v.

**John C. PHARR, Thomas P. Owens, Jr., and Owens & Turner, P.C., Appellee.**

**No. S–10229.**

Supreme Court of Alaska.

April 25, 2003.

Kristi Nelson Pennington and Richard D. Pennington, Pennington & Associates, Anchorage, and Gary Eschbacher, G.R. Eschbacher Law Offices, Anchorage, for Appellant.

David Karl Gross and Timothy J. Petumenos, Birch, Horton, Bittner and Cherot, Anchorage, for Appellee John C. Pharr.

James D. Gilmore, Gilmore & Doherty, Anchorage, for Appellees Thomas P. Owens, Jr. and Owens & Turner, P.C.

Before: MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Trudy Tush appeals the trial court's grant of summary judgment against her on four separate motions. Because genuine issues of material fact remain on all four, we reverse the order of the superior court granting summary judgment on each motion and we remand the case to the superior court for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Trudy Tush and her former husband Larry Tush sued Hector Perez to evict him. Tush owns numerous rental properties and has been involved in real estate investment for over twenty years. Perez was one of her tenants.

On August 23, 1993 Tush, acting *pro se* for herself and Larry, sued to evict Perez from her rental property at 1201 Chugach Way in Anchorage, a single family residence (Chugach property).[1] Perez obtained legal representation from Alaska Legal Services. Perez answered Tush's complaint and filed numerous counterclaims against Tush alleging intentional infliction of emotional distress, willful diminution of essential services, breach of the covenant of good faith and fair dealing, harassment, retaliatory eviction, unlawful termination of utilities, and failure to maintain and repair the premises. Tush then hired attorney John C. Pharr to represent her and Larry's interests.

Throughout her real estate investments, Tush and her spouse managed the properties by themselves. To obtain insurance for the properties, Tush would normally telephone an insurance broker and attempt to purchase whatever her bank required her to carry, while investigating to find the cheapest price. "I would tell them what I wanted and ... they would get it for me."

Tush had rental property insurance, including liability coverage, for the Chugach property. Tush purchased this policy from the Umialik Insurance Company. Umialik covered a number of Tush's properties. After the policy was obtained, certain tenants filed claims against Tush. One tenant from 1117 Chugach Way, which Tush also owned, alleged improper notice of eviction and intentional infliction of emotional distress. Tush notified her insurance broker, who notified Umialik of the claim. Umialik hired Tush an attorney, provided her a defense, and settled the claim for $5,000.

Umialik subsequently refused to renew the policy. Tush then sought coverage for her properties from other companies. She eventually decided on State Farm Fire and Casualty Company (State Farm). Tush applied for insurance from State Farm over the telephone. Tush obtained a separate policy for the Chugach property from other properties she owned on Chugach Way. Tush's application was filled out by an insurance agent speaking with Tush over the phone. Tush never signed the application. The applica-

---

1. *Tush v. Perez*, 3AN–93–7673 CI, 1997 WL 867786.

tion states that Tush had not had a loss in the last three years, had never had an insurance carrier deny renewal, and that Tush's last insurance company was Liberty National. All of these statements are false. State Farm issued Tush a policy including, among other things, liability coverage with limits of $1,000,000 per occurrence.

Tush was deposed on September 15 and September 20, 1993. At the deposition, Tush was asked questions regarding her insurance coverage for the Chugach property. Pharr objected as to relevance, and Tush largely refused to respond.[2] Later, Tush was marginally more forthcoming on the subject of insurance, but she answered the question whether she had liability insurance on the premises at 1201 Chugach with, "No, it's just the value of the house."

In November Pharr received a settlement offer from Perez for $25,000, including attorney's fees and costs. Pharr alleged that he discussed the offer with Tush in his office and then mailed it to her for documentation purposes. Pharr further claimed that when he showed it to Tush she laughed "and tossed it down on the desk." According to Pharr, no further discussion was held regarding this settlement offer. Tush denied that the $25,000 settlement offer was ever communicated to her.

There was then no action in the *Perez* lawsuit until October 1994, when Dan Fitzgerald entered his appearance on behalf of Perez by filing a second amended answer and additional counterclaims. Pharr claims that, at around this time, he discussed the new counterclaims filed by Fitzgerald with Tush.

Pharr recounted their conversation at his deposition:

it's been my experience that insurance actually draws lawsuits because the claimant is after the insurance. It's more of a fat easy target than trying to execute on somebody's property, for example. So they may—you know, the other side may have been under some impression that there was insurance, and that they were going to go after that insurance. And once they found out there wasn't any insurance, they'd be discouraged from pursuing it.

On December 28, 1994 Fitzgerald successfully had the case removed to the superior court.

Tush and Larry divorced in 1995. Tush believed the divorce created a conflict of interest in Pharr's representation. Because of this perceived conflict of interest, Tush terminated Pharr's services on January 4, 1995, instructing him to do nothing further in her case. There was no other reason why Pharr's services were terminated; Tush was generally happy with the work he had done in the case. At no time during Pharr's representation of Tush did Pharr ever ask to see any of Tush's insurance policies, nor did he himself investigate or direct Tush to investigate whether her insurance would cover any of Perez's claims.

On January 24, 1995 Pharr received Perez's second set of requests for production. Two requests asked for production of Tush's insurance policies. Although these requests for production arrived in Pharr's office after Tush had terminated his services, Pharr accepted service of the document because he was the attorney of record and had not re-

2. The following colloquy ensued:
Q: Are any of the rental properties insured?
A: Yes.
Q: And with whom?
A: I'm not going to answer.
Q: Do you have an agent—you're not willing to state who your agent is?
A: No.
Q: Do you have an agent?
Mr. Pharr: I think we've already answered this to the extent that we are going to answer it.
Ms. Hood: This is the first time I've asked that particular question.
Mr. Pharr: Go ahead and answer—ask your question.

. . . .
Q: My question is, do you have an insurance agent?
A: I guess this is the fourth time you've asked me that.
Q: And your answer is?
A: I'm not going to answer.
Q: Okay. Is your property particularly at 1201 Chugach insured?
A: Yes.
Q: And with whom is that insured?
A: I'm not going to answer.

ceived notice of who Tush's new attorney would be. Pharr, however, did not attempt to answer the discovery request, mailing it to Tush with an explanation of when her responses were due.[3] On February 6, 1995 Pharr sent a letter to Fitzgerald attempting to discourage him from pursuing the case based on his belief that there was no insurance coverage involved. This letter was copied to Tush. Pharr also answered Perez's new counterclaims (filed by Fitzgerald on February 20) to protect Tush's interests while she was obtaining new representation.

Robert Reiman entered his appearance as Tush's attorney in February 1995. In May 1996 Perez made an offer of judgment to Tush for $50,000. Reiman alleged that Tush was informed of this offer but refused to accept it. In January 1997 the parties had a settlement conference and Tush offered $20,000 in an attempt to settle the case. This offer was refused. At a second settlement conference Perez offered to settle for $450,000. Tush countered with a piece of property worth approximately $50,000 and $20,000 in cash paid out over a period of time. Perez then made a counteroffer of $400,000. This offer was not accepted and settlement negotiations between the parties ended.

While Reiman represented Tush, Fitzgerald moved to compel the answers to the second set of requests for production. Reiman alleges he produced the declaration page from the State Farm policy.[4] Although Reiman thought "it may provide coverage on one or more of the claims," he did not attempt to contact State Farm and tender the claim. Reiman alleges he suggested to Tush that she tender the claim to State Farm and that she told him in response that she did not want to do so.

Tush fired Reiman and replaced him in January 1997 with attorney Tom Owens.

Owens accepted representation in the matter after a continuance of the trial date was obtained by Reiman.

The *Perez* lawsuit went to trial. In November 1997 a jury found in favor of Perez and awarded a verdict, including punitive damages, in excess of $1,600,000.

On April 8, 1998 Tush received notice that State Farm would no longer be insuring her other properties under a separate policy "due to misrepresentation regarding prior cancellation or refusal to issue or renew similar insurance by an insurer."

Tush again retained new counsel. Counsel then tendered the *Perez* claim to State Farm on February 4, 1999. State Farm undertook an investigation to determine coverage. On February 22, 1999 State Farm disclaimed coverage under Tush's primary insurance policy because the claim was not tendered "on a timely basis," prejudicing its ability to defend and breaching the policy's "prompt reporting" requirement. State Farm further investigated and concluded that the Tushes were not covered under any of their other insurance policies for the *Perez* judgment, because of both the delay in tendering the claim and the policy's intentional acts exclusion.

**B. Proceedings**

In October 1999 Tush filed the present case alleging that her attorneys, Pharr, Reiman,[5] Owens and Owens & Turner P.C., acted below the standard of care during the course of the *Perez* lawsuit by failing to tender her claim to State Farm. She alleged causes of action for professional negligence, breach of fiduciary duty, and breach of contract. Tush contended that had State Farm been given notice of the counterclaims, it would have acted on them under Tush's in-

---

**3.** Pharr did answer these requests on behalf of Larry whom he still represented at this time. However, Pharr claims that because Larry was out of town and "[he] had to do something" regarding the discovery, he "simply said [Larry] does not have any of these documents you want" and objected to the requests as overbroad. Pharr eventually withdrew from his representation of Larry as well.

**4.** Fitzgerald stated in an affidavit that no insurance policy was ever produced by Tush or any of her lawyers during the course of the *Perez* lawsuit.

**5.** Reiman subsequently settled with Tush and the court dismissed the cause of action against him with prejudice.

surance policy and provided a defense and either settled the claim or paid any verdict.

Four motions for summary judgment were filed by the defendants in this matter. The first was filed by Pharr on June 30, 2000, arguing that because Tush testified the Chugach property did not have coverage, he was under no duty to further investigate whether or not such a policy existed. The second motion for summary judgment was filed September 21 by Reiman. In his motion Reiman argued that not only did he not have a duty to tender the claim, but also that even if such a duty existed, he was not the cause of Tush's injury as the misrepresentations in her application for coverage to State Farm voided the policy *ab initio*. The third motion for summary judgment was filed October 5, also by Pharr. In it, Pharr joined in Reiman's motion and further argued that even if Tush was correct that a duty existed, any negligence on the part of the defendants was not the cause of Tush's harm as State Farm would have denied coverage under the intentional acts exclusion. The final motion for summary judgment was filed by Owens and Owens & Turner P.C. In it, Owens argued that regardless of his or his firm's actions State Farm would have denied the claim because of Tush's failure to tender it in a timely fashion. Owens also joined in Reiman's motion for summary judgment and Pharr's second motion for summary judgment.

Superior Court Judge John E. Reese granted each motion for summary judgment, specifically adopting as to each the arguments made by defendants.

Tush now appeals.

### III. STANDARD OF REVIEW

We review a trial court's grant of summary judgment *de novo* and affirm if the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6] All reasonable factual inferences are drawn in favor of the non-moving party.[7]

■■■■ Contract language interpretation is a question of law, subject to our *de novo* review.[8] Insurance contracts are interpreted "by looking to the language of the disputed policy provisions, the language of other provisions of the policy, and to relevant extrinsic evidence. In addition, we also refer to case law interpreting similar provisions."[9]

### IV. DISCUSSION

■■■■ A claim of legal malpractice consists of four elements: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."[10]

### A. Summary Judgment Was Improperly Granted on Pharr's First Motion for Summary Judgment Because Material Facts Were in Dispute as to Pharr's Duty To Investigate.

■■■■ Pharr argues he did not breach his duty of care to Tush by failing to further investigate the issue of insurance. Tush responds that reasonable minds could differ on whether or not Pharr had a duty to further investigate, creating a genuine issue of material fact in dispute. We agree with Tush.

■■■■ Because the question of whether a tort duty exists is usually a question for the trier of fact and therefore not susceptible to summary adjudication, summary judgment on the question of a tort duty is only appro-

---

6. *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 585–86 (Alaska 2001).

7. *Id.* at 586.

8. *Cox v. Progressive Cas. Ins. Co.*, 869 P.2d 467, 468 n. 1 (Alaska 1994).

9. *Id.* (internal citation omitted).

10. *Doe v. Hughes, Thorsness, Gantz, Powell & Brundin*, 838 P.2d 804, 806 (Alaska 1992) (quoting *Belland v. O.K. Lumber Co.*, 797 P.2d 638, 640 (Alaska 1990)).

priate "when the undisputed facts support only one reasonable inference."[11]

But the facts pertinent to Pharr's initial motion for summary judgment supported more than one inference. The question before the court concerned the first element of a legal malpractice claim: Did Pharr have a duty to investigate Tush's insurance? For several reasons we conclude that material facts concerning this issue were in dispute.

First, Tush's deposition testimony on the question of what type of insurance she carried on her rental properties was ambiguous. She testified that all of her properties were covered, but then she answered the question, "Is it liability insurance?" by saying, "No, it's just the value of the house," a statement that implies, but does not clearly state, that the insurance covers only loss of premises. But then, when asked if her other policies strictly insured the value of the house, she responded "I really don't know." Finally, when asked if she knew the extent of her insurance coverage and other information pertaining to

her policies, Tush responded, "I leave that up to the insurance agent and I talk to him about it." Pharr contends that Tush's sworn testimony that she did not have liability insurance relieved him of the duty to inquire further. But given the ambiguous nature of Tush's deposition responses,[12] Pharr's defense that he was entitled to rely on his client's deposition testimony raises disputed issues of fact.

Second, Pharr relies on his assertion that Tush told him in a separate conversation that she had no liability insurance on the subject property. But Tush denied that such a conversation ever took place, creating a further material factual dispute.

Third, Tush offered substantial expert opinion to support the proposition that an attorney faced with the situation facing Pharr had a duty to obtain and inspect the insurance policies so as to competently advise his client. Expert Robert Wainscott opined, "It has been my experience that it is the standard and essential practice of the attor-

**11.** *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell,* 956 P.2d 1199, 1203 (Alaska 1998).

**12.** The complete exchange was as follows:
Q: Miss Tush, do you have insurance for the rental properties?
A: Yes.
Q: And who is your agent, or do you have an agent?
A: Yes.
Q: And who is your agent?
A: Conrad with State Farm.
Q: Conrad at State Farm?
A: Uh-huh.
Q: And is he a local agent?
A: Yes.
Q: And does he insure all of your rental properties?
A: No.
Q: Which ones are uninsured?
A: I don't have anything uninsured.
Q: Oh, I see. Who else insures your rental properties?
A: It used to be Home State, I don't know what they are called now.
Q: So you have insurance policies with Conrad at State Farm and Home State?
A: Yes.
Q: Are there any other insurance agents with whom you have policies?
A: No.
Q: Are there any other insurance policies that you have with regard to the rental properties?
A: No.

Q: Okay. And you've already stated that you don't have copies of policies, are you aware of your coverage limits or any other information pertaining to those policies?
A: I leave that up to the insurance agent and I talk to him about it.
Q: Do you have insurance for 1201 Chugach?
A: Yes.
Q: Do you know the extent of the insurance, what type of insurance it is?
A: It's valued at $20,000, if that's what you're referring to.
Q: Is it liability insurance?
A: No, it's just the value of the house.
Q: Okay. Are your other insurance policies strictly insuring the value of the house?
A: I really don't know.
Q: Who has your policy on 1201 Chugach, Conrad or Home State?
A: State Farm.
Q: Have you ever dealt with an adjuster regarding your rental properties?
A: No.
Q: So you wouldn't know the name of the adjuster that you would deal with if there were to be an issue regarding your rental properties?
A: No.
Q: Okay.
A: I've never had to contact one.
Q: Okay. Have you ever had to make a claim on any of your policies for liability to tenants of any kind?
A: No.

ney to immediately seek out all insurance policies that may possibly provide coverage for a date of event and tender the claims or counterclaims to the carrier or carriers who wrote the policies." Expert James A. Hanson offered the opinion that, after Tush's deposition, "prudence required a full review of her insurance policies by her counsel." Expert Roger Holmes added, "It is the standard of care for a lawyer representing a client in a personal injury, bodily injury or property damage claim to help the client ascertain the availability of insurance coverage which might provide for a defense and/or indemnity to the client. This should be done as soon as possible after the commencement of the case." To be sure, there was contrary expert testimony. But at the least, a material fact dispute existed on the attorney's duty.[13]

Finally, Pharr admitted that he adopted the position that Tush was better off without liability insurance, because in his experience the existence of such insurance attracted plaintiffs.

Pharr cites a number of cases for the proposition that a lawyer has no duty to investigate the truth or falsity of his or her client's representations.[14] But these cases involved unambiguous situations, and Pharr's argument assumes that Tush's deposition testimony stating she does not have liability insurance was unequivocal. As noted above, this is far from the case. The rule that an attorney can rely on a client's factual representations absent circumstances indicating otherwise provides scant support for Pharr, because there are numerous circumstances indicating otherwise here: the ambiguity of Tush's deposition statements, her denial that she told Pharr outside of the deposition that she had no liability insurance, and expert opinion to the contrary. As stated in *Milliner v. Elmer Fox & Co.*,[15] one of the cases upon which Pharr relies, "[a]s a general rule, an attorney is not required to investigate the truth or falsity of facts and information furnished by [a] client, and his failure to do so would not be negligence ... *unless facts and circumstances of the particular legal problem would indicate otherwise.*"[16] The court in *Harline v. Barker*,[17] applying *Milliner*, looked to see if there were any "special circumstances" indicating that the client's representation could not be relied on and found there were.[18] Here too, the circumstances of Tush's testimony arguably should have alerted Pharr that her single representation that she did not have liability insurance might have required further investigation. A review of Tush's testimony shows that the issue of what insurance she had was far from clear. When asked if she knew the extent of her insurance coverage or other information pertaining to her policies, Tush answered "I leave it up to the insurance agent and I talk to him about it." Also, Tush's testimony clearly stated that she was in possession of other insurance policies as well. Given that Pharr knew this, there is a material fact dispute as to whether he should have inquired as to whether any of these policies might have provided possible coverage for the *Perez* claim.

Because reasonable minds could differ as to whether Pharr had a duty to further in-

13. *Haisley v. Grant*, 486 P.2d 367, 370–71 (Alaska 1971) (holding that "the weight to be accorded to an expert's opinion is, for all practical purposes, exclusively within the province of the jurors as triers of the facts.").

14. *Loyd v. Paine Webber, Inc.*, 208 F.3d 755, 760 (9th Cir.2000) (holding that in certain circumstances attorney had no duty to independently investigate whether clients were engaging in fraudulent conduct); *Heine v. Newman, Tannenbaum, Helpern, Syracuse & Hirschtritt*, 856 F.Supp. 190, 195 (S.D.N.Y.1994) (holding that attorney was not negligent in relying on representations made by client); *Parksville Mobile Modular, Inc. v. Fabricant*, 73 A.D.2d 595, 422 N.Y.S.2d 710 (N.Y.App.Div.1979) (noting that at-torney generally should not be held liable for ignorance of facts client neglected to state); *Milliner v. Elmer Fox & Co.*, 529 P.2d 806, 808 (Utah 1974).

15. 529 P.2d 806 (Utah 1974).

16. *Id.* at 808 (emphasis added).

17. 854 P.2d 595 (Utah App.1993).

18. *Id.* at 599–600 (reversing grant of summary judgment for defendant attorneys because a reasonable juror could have found that attorneys breached duty to Harline by failing to ask him about court orders needing attention or to investigate ongoing bankruptcy proceedings).

vestigate whether Tush had liability insurance for the Chugach property, summary judgment on Pharr's first motion was inappropriate.

### B. Summary Judgment Was Improperly Granted on Pharr's Second Motion for Summary Judgment Because Material Facts Were in Dispute as to Whether State Farm Would Have Denied Coverage or Could Have Done So Successfully.

To make out a *prima facie* claim for attorney malpractice, Tush must show that the defendants were the cause of her injury. Pharr's second motion for summary judgment argued that Tush is unable to do this because regardless of the defendants' actions, State Farm would have denied Tush's claim due to misrepresentations in her application or under the intentional acts exclusion of her policy.[19] Tush claims that any argument as to what State Farm would or could have done had the claim been tendered is speculative and that there are genuine issues of material fact in dispute with regard to both her alleged misrepresentations in obtaining her State Farm policy and the intentional acts exclusion of that policy. Again we agree with Tush.

### 1. There are disputed issues of material fact as to whether the misrepresentations in Tush's insurance application would have caused or permitted State Farm to void the policy *ab initio*.

 Tush argues that by ruling that regardless of whether the claim was promptly tendered to State Farm, that company would have denied coverage due to the material misrepresentations in Tush's application, the superior court improperly resolved a genuine issue of disputed material fact and misapplied the applicable law. Pharr responds that the superior court correctly decided this causation issue. Causation issues such as this are normally left for the trier of fact

where unresolved fact questions remain, although the court may decide the matter where the evidence is such that reasonable minds cannot differ.[20]

Tush's policy for the Chugach property contains a provision dealing with concealment, misrepresentation, and fraud. Under it, the policy is void in any case of fraud by the insured as it relates to the policy. The policy is also void if the insured intentionally conceals or misrepresents a material fact concerning the policy or the covered property.

Under AS 21.42.110,

All statements and descriptions in an application for an insurance policy or annuity contract, or in negotiations for the policy or contract, by or in behalf of the insured or annuitant, shall be considered to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements may not prevent a recovery under the policy or contract unless either

(1) fraudulent;

(2) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Tush's application for insurance was made by telephone and, as a result, she did not sign the application. Tush denied that she had been asked about prior losses or cancellations, testified that she had told the State Farm agent that her previous insurance had just been canceled, and testified that she did not understand "prior losses" to mean insur-

---

**19.** Pharr's second motion for summary judgment and Reiman's motion for summary judgment, in which Pharr and Owens joined, will be considered together in this section as both deal with similar issues of causation.

**20.** *Sharp v. Fairbanks N. Star Borough,* 569 P.2d 178, 183–84 (Alaska 1977).

ance claims. Tush offered expert opinion to the effect that because of the uncertainty introduced by Tush's testimony, State Farm might not have denied coverage or might have defended Tush under a reservation of rights.[21] Under these circumstances, the question whether State Farm would have voided the policy *ab initio*—a question that required speculation as to what another would have done—was one for the jury.[22] Moreover, although State Farm has maintained that even an unsigned application can be canceled, summary judgment would still be inappropriate. Simply because State Farm had the option to cancel the policy does not mean that it would have done so had the claim been promptly tendered under these circumstances.

Further, what State Farm might have done in response to a tender of defense is by no means the complete inquiry. Even if State Farm would have denied coverage or refused to defend, the question whether such actions would have been legally sustainable if challenged must also be decided.

Pharr relies on *Bennett v. Hedglin*,[23] but that case is distinguishable factually from the present case. In *Bennett*, we upheld the superior court's grant of summary judgment against Bennett's claim for insurance coverage because it was clear that Bennett made the misrepresentation on the application. Even though Tush's actions in this case and in the *Perez* lawsuit may cast her credibility

into question,[24] summary judgment is unavailable where credibility issues are to be resolved.

Because how the misstatements on Tush's application came about and what actions State Farm would or could have taken after discovering the misstatements are unclear and in dispute, summary judgment should not have been granted on these grounds.

## 2. There are disputed issues of material fact as to whether the intentional acts exclusion in Tush's policy would have precluded coverage.

█ Pharr contends that the intentional acts exclusion would have precluded coverage for the *Perez* claims under Tush's State Farm policy. Tush argues in opposition that State Farm could not properly have denied a defense based on the policy's intentional acts exclusion under Alaska law.

Tush's rental dwelling policy provides business liability coverage where State Farm agrees to "pay up to our limit of liability for the damages for which the **insured** is legally liable ..." including malicious prosecution and wrongful eviction. (Emphasis in original.) However, this coverage does not extend to "**bodily injury, personal injury,** or **property damage** ... which is either expected or intended by an **insured;** or ... to any person or property which is the result of willful and malicious acts of an **insured**[.]" (Emphasis in original.)

**21.** Tush offered the expert opinion of David G. Sever, who worked for over thirty years in the insurance industry as a claims adjuster and an underwriting manager, for the proposition that the misrepresentations in the application would not provide a basis for State Farm to void coverage. Because Tush did not sign the application, according to Sever, she "made no written representations to the insurance company of any type or kind." Sever's opinion supports the conclusion that what action State Farm would have taken on discovering the misrepresentations is a question of fact for a jury. Pharr claims what State Farm would have done is immaterial, arguing that what is important is whether the policy could have been voided. This argument is unpersuasive, for in making his causation argument, Pharr must show that State Farm would have voided the policy to prevail. If State Farm might not have voided the policy, given the uncertainty of Tush's responsibility for the misstatements in the application, Pharr's alleged mal-

practice could have been the cause of loss to Tush.

**22.** *See, e.g., Hawaiian Life Ins. Co., Ltd. v. Laygo*, 884 F.2d 1300, 1303 (9th Cir.1989) (holding that insured who allegedly made misrepresentations is entitled to opportunity to explain actions and that relationship between insured and agent in filling out application should be developed on record). If the matter was to be determined by this court, however, each of these factual inferences would have to be resolved in favor of Tush as the nonmoving party.

**23.** 995 P.2d 668 (Alaska 2000).

**24.** For example, it is uncontested that similar misrepresentations appear on insurance applications Tush made from 1993 to 1998. Tush claimed that each time the insurance agent failed to ask her the pertinent questions.

■ " 'An insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements.' " [25] The duty to defend is broader than the duty to provide coverage.[26] A duty to defend arises whenever a complaint sufficiently alleges an issue of liability covered by the policy on its face, "even if the allegations of the complaint are false or groundless." [27] "The insurer may therefore be obligated to defend even where it has no ultimate liability under the policy." [28] And, the "presence of other allegations in the complaint which are not within policy coverage does not relieve [an insurer] of its duty to defend." [29]

Pharr is correct that the *Perez* counterclaims have as their basis intentional conduct. However as even Pharr's own expert, Daniel T. Quinn, opined, State Farm might have agreed to defend in any event. First, while Counts I and III through VI of the *Perez* complaint allege intentional misconduct, Count II alleges in part that "[p]laintiffs deliberately *or negligently* failed to provide essential services to the rental premises." (Emphasis added.) Quinn opined that although the majority of the complaint pleads intentional acts, in such a situation he would advise the insurer to defend, possibly under a reservation of rights. Wainscott opined that even more of the counts might have been accepted for coverage by State Farm, and that the remainder would be accepted by State Farm under a reservation of rights. Disputed questions of fact precluded summary judgment here.

Finally, although Tush's policy excludes intentional acts, the policy explicitly covers injuries "arising out of" wrongful eviction, a tort that may be committed either as intentional or " 'unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct.' "[30] Tush's policy does not differentiate between intentional and negligent wrongful eviction. Accordingly, because the policy includes wrongful eviction, it must be deemed to be excluded from the intentional acts exclusion.[31]

In sum, disputed issues of material fact preclude summary judgment on Pharr's second motion for summary judgment concerning whether State Farm would or could have denied coverage because of misrepresentations in the application. These include whether Tush was responsible for the misrepresentation and whether State Farm would have denied coverage and a defense under the facts of this case. Summary judgment was also inappropriate on the question of whether the intentional acts exclusion of the policy barred coverage, because at least one of the counts of the original *Perez* counterclaims alleged negligence by Tush, and the policy specifically included wrongful eviction. Thus, reasonable minds could differ as to whether the defendants' failure to tender the claim was the cause of Tush's injury, making the question of causation one for the jury.

## C. Summary Judgment Was Improperly Granted on Owens's Motion Because Whether Tush's Claim Would Have Been Untimely Had Owens Tendered it to State Farm Involves Disputed Questions of Fact.

Owens claims that regardless of whether it was negligent for him to have failed to tender Tush's claim to State Farm, Tush suffered no damage as the claim would have been deemed untimely. Owens bases this argument on the fact that by the time Owens had

25. *Fejes v. Alaska Ins. Co., Inc.,* 984 P.2d 519, 522 (Alaska 1999) (quoting *Sauer v. Home Indem. Co.,* 841 P.2d 176, 180 (Alaska 1992)).

26. *Id.*

27. *Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815, 817 (D.Alaska 1987).

28. *Fejes,* 984 P.2d at 522.

29. *Sauer,* 841 P.2d at 181.

30. *See Barkett v. Brucato,* 122 Cal.App.2d 264, 264 P.2d 978, 986 (1953) (listing elements of wrongful eviction tort) (quoting RESTATEMENT OF TORTS § 822 (1939)).

31. *E.g., Stanback v. Westchester Fire Ins. Co.,* 68 N.C.App. 107, 314 S.E.2d 775, 779 (1984) (finding that policy covering "personal injury" which defined "personal injury" to include intentional torts that also had an exclusion for all intentional acts ambiguous and that such ambiguity should and would be resolved in insured's favor).

agreed to represent Tush, three and one-half years had passed and the case had escalated from one in which plaintiff offered to settle for $25,000 to one where plaintiff demanded $450,000 to settle. Tush argues that the question of whether State Farm would have denied coverage is a question of fact for a jury, making the superior court's entry of summary judgment improper.

We have recognized "the strong societal interest in preserving insurance coverage for accident victims so long as the preservation is equitable for all parties involved."[32] Therefore, absent prejudice, "regardless of the reasons for the delayed notice, there is no justification for excusing the insurer from its obligations under the policy."[33]

The burden of showing prejudice from a delay in notice rests with the insurer, not the insured.[34] "Generally proof of prejudice to the insurer is a question of fact."[35]

Tush's State Farm policy requires the insured to promptly notify the insurer in the event of any occurrence that might result in a claim. The policy also states, "If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit." It is undisputed that notice of the Perez judgment against Tush was not made "promptly." The parties dispute the existence of any issues of genuine material fact as to whether State Farm was prejudiced by Tush's delay and whether State Farm might have accepted the claim regardless.

Owens cites many cases for the proposition that a delay of three and one-half years constitutes prejudice,[36] arguing that State Farm would have denied the claim even if he had tendered it. However, in those cases the plaintiffs were suing their insurance companies. Here, State Farm is not a party to this appeal. Therefore, whether three and one-half years is "untimely" is irrelevant if no prejudice resulted to State Farm or if State Farm would have accepted the claim anyway.

### 1. There is no factual dispute that State Farm was prejudiced by the delay.

The parties agree that Tush delayed over three years in tendering the case to State Farm. Owens claims the delay in tendering the claim was unreasonable and every expert retained in the matter agrees, primarily because the delay prejudiced State Farm from being able to properly investigate and possibly settle the matter. Tush argues that the denial of participation in the settlement process is not sufficient to constitute prejudice and that even if it was, whether State Farm might have accepted the claim is a genuine issue of material fact in dispute.

The evidence of prejudice to State Farm is overwhelming. Wainscott, an expert retained by Tush's counsel, opined that "[i]t is clear that State Farm was prejudiced by the late notice since the opportunity to settle the claim for as little as $25,000 existed early in the case." In his supplemental report Wain-

---

**32.** *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 125 (Alaska 1984).

**33.** *Id.* (reversing grant of summary judgment in favor of insurer due to insurer's failure to offer no more than mere allegations of prejudice from insured's six-year delay in tendering claim under policy).

**34.** *Id.* at 126 (noting that "[t]he insurer is in a better position to demonstrate that its ability to investigate, defend or settle a claim has been impaired").

**35.** *Id.*

**36.** *See, e.g., AVCO Corp. v. Aetna Cas. & Sur. Co.,* 679 A.2d 323, 328 (R.I.1996) (holding that delay of two and one-half years did not constitute "immediate notice" as required by policy, as "no

judicial holding or legal authority ... would equate immediate as meaning within two and one-half years thereafter"); *Martinson v. Mass. Bay Ins. Co.,* 947 F.Supp. 124 (S.D.N.Y.1996) (holding two-year delay from notice of claims and fourteen-month delay from time action commenced untimely and upholding insurer's denial of coverage). Under New York law, however, "an insured's failure to comply with a notice-of-claim provision is generally a complete defense to actions against the insurer for coverage." *Id.* at 128 (citing *Olin Corp. v. Ins. Co. of N. Am.,* 966 F.2d 718, 723 (2d Cir.1992)). Because Alaska law requires a showing of prejudice in addition to an insured's failure to comply, *see Weaver Bros.,* 684 P.2d at 126 and *supra* text accompanying n. 33, New York law is generally inapplicable on this issue.

scott stated further that "[t]here can be no question that State Farm's rights were prejudiced by the late notice. In 43 years of insurance experience, I don't believe I've ever seen a case with more evidence of prejudice to a carrier." And, Holmes, another of Tush's retained experts, also agreed: "In my mind, the fact that they could have possibly settled for a lesser amount than when they came into the case is prejudice." Reiman's expert agreed, noting State Farm suffered "extreme prejudice" and that the timely reporting requirement would have entitled them to deny that coverage if they so desired.

2. **Whether State Farm would have denied a defense of the claim, even if prejudice did exist, is a disputed issue of material fact.**

 Owens argues that "State Farm's conduct is not relevant to Tush's legal malpractice case against Owens because this is not a coverage dispute between an insurer and an insured." However, because Owens is making a causation argument, in order to prevail on summary judgment he must show not only that State Farm was prejudiced but also that there is no genuine issue of material fact that State Farm would have denied the claim because of the prejudice. Owens has not met this burden.

To bolster his position, Owens produced an expert opinion from William Marr, a team manager for State Farm. In Marr's opinion, had Owens tendered the claim to State Farm six to eight months before trial, when he first agreed to represent Tush, State Farm likely would have denied the claim as untimely and as prejudicial to its ability to properly investigate. Tush responded with the expert opinion of Roger Holmes, who opined that Marr's prediction of how State Farm would have reacted was wrong: "I read what Mr. Marr said would have happened. And, in my opinion, that isn't what would have happened. They would have defended the case under a reservation of rights, or they would have defended it without a reservation of rights, if they decided that CHI counsel was too expensive." Expert witness Robert Wainscott also testified that State Farm would have

most likely proceeded with a defense had Owens tendered the case, especially after the trial date was continued: "And at the point in time where Tom Owens had an extension of time ... I would have, I would have proceeded with the coverage." "I believe they would have accepted the tender, probably, under reservation of rights, I would guess. I'm just guessing. I'm guessing what I would have done if I was in their shoes."

In sum, even if State Farm suffered prejudice by the delay in tender, there is a genuine question of material fact as to whether State Farm might have accepted the tender of the *Perez* claim. In these circumstances, summary judgment on Owens's motion was improper.

## V. CONCLUSION

Because genuine issues of material fact remain with regard to each of the four summary judgment motions, we REVERSE the decision of the superior court granting summary judgment and we REMAND this case for further proceedings.

FABE, Chief Justice, not participating.