Claude H. MORRIS, Jr., Appellant,

v.

ROWALLAN ALASKA, INC., Rowallan Mine Partnership, Gold Hill Mining Co., Annette R. McDonald, and Ascension LLC, Appellees.

No. S–11325.

Supreme Court of Alaska.

Sept. 30, 2005.

Joan Travostino, Preston Gates & Ellis, LLP, Anchorage, for Appellant.

Carl J.D. Bauman, Hughes Thorsness Powell Huddleston & Bauman, LLC, Anchorage, for Appellee Annette McDonald.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Did the superior court err in granting defendant McDonald summary judgment after two co-defendants filed for bankruptcy protection? Morris, the plaintiff below, contends that the automatic stay triggered by the bankruptcy filings should have also stayed the action against the non-debtor defendant McDonald. Because there is an insufficient identity of interest between McDonald and the debtor defendants, we reject Morris's argument. However, because there was a genuine issue of material fact about the legal relationship among the co-defendants, summary judgment should not have been granted. Accordingly, we reverse.

## II. FACTS AND PROCEEDINGS

Claude H. Morris owns mining claims located north of the Denali Highway in the Talkeetna Recording District. He sued the owners and developers of neighboring claims on various theories including breach of contract and trespass. The events giving rise to these claims began in 1998.

On October 14, 1998 the previous owner of the neighboring claims entered into a sales agreement to convey the claims to "ANNETTE R. MCDONALD et.al., D.B.A. GOLD HILL MINING COMPANY." The agreement, which contained the terms of sale and payment schedule, was signed by McDonald's son William pursuant to a power of attorney. William also signed a $450,000 promissory note.

The parties dispute whether McDonald or the Gold Hill Mining Company subsequently owned the claims. At the time of contract, Gold Hill was not a separate legal entity; McDonald concedes that it was incorporated in Alaska at a later date.[1] The various documents relating to the sale were inconsistent

---

1. McDonald's motion for summary judgment and her brief to this court posit that the date of Gold Hill's incorporation in Alaska was October 20, 1998. No documentary evidence has been offered to support this date.

in their descriptions of the new owner: (1) "ANNETTE R. MCDONALD et.al., D.B.A. GOLD HILL MINING COMPANY" on the sales agreement; (2) "ANNETTE R. MC-DONALD ET.AL. DBA GOLD HILL MINING" on the promissory note and on the forty-eight separate Quit Claims Deeds (dated February 23, 1999); (3) "Annette R. McDonald, *et al.*," in the Water Rights Quitclaim Deed and the Release and Assumption of Liability and Transfer of NPDES Permit (both dated February 24, 1999); and (4) simply "ANNETTE R. McDONALD" on the Quit Claim Deed to subsequent purchaser Ascension, LLC (dated June 23, 2000).

In short, between February 1999 and June 2000, either McDonald or Gold Hill owned the neighboring claims. During this period, Gold Hill actively mined the neighboring claims. After June 2000, Ascension, LLC owned and also actively mined the claims.[2] Morris alleged that he entered into a contract in June 1999 with two agents of Gold Hill. In exchange for drilling services and obtaining Bureau of Land Management permits and reclamation plan approval, Morris "agreed to allow defendants to place tailings, overburden, and mine workings from defendants' claims on plaintiff's mining claims."

In January 2002 Morris filed an amended complaint against McDonald, Gold Hill, and Ascension.[3] The complaint set forth four causes of action: (1) breach of the June 1999 contract; (2) breach of Gold Hill's BLM-approved mining plan, which resulted in the diversion of a creek allegedly causing damage to Morris's claims; (3) foreclosure of a lien on real property;[4] and (4) trespass.

On July 14, 2003 Gold Hill and Ascension filed bankruptcy petitions in the District of Connecticut. On August 13, 2003 McDonald moved for summary judgment against Morris, contending that she acted only in a representative capacity for Gold Hill and that no claims for personal liability had been asserted. Morris's opposition argued that McDonald was the record owner of the claims, but he otherwise did not respond substantively to her arguments. Rather, he argued that a ruling on McDonald's motion would violate the "automatic stay" bankruptcy provision, 11 U.S.C. § 362(a).

Superior Court Judge Peter A. Michalski granted summary judgment to McDonald without discussion on September 24, 2003.[5] The superior court subsequently denied Morris's motion for reconsideration and granted final judgment on November 24, 2003. Morris appeals.

## III. STANDARD OF REVIEW

 "We review a grant of summary judgment *de novo* and adopt the rule of law that is most persuasive in light of precedent, reason, and policy. To obtain summary judgment, the moving party must prove the absence of a genuine factual dispute and its entitlement to judgment as a matter of law. All reasonable inferences of fact are drawn in favor of the nonmoving party."[6]

## IV. DISCUSSION

**A. The Automatic Stay Triggered by the Bankruptcy Filings of Mc-Donald's Co–Defendants Did Not Stay McDonald's Motion for Summary Judgment.**

 Morris contends that the bankruptcy filings by Gold Hill and Ascension resulted in an automatic stay of any decision regard-

---

**2.** The briefing suggests that Ascension, LLC is essentially a reorganized version of Gold Hill.

**3.** Morris had also sued Rowallan Alaska, Inc. and Rowallan Mine Partnership, entities that had owned and developed the claims before the conveyance to McDonald/Gold Hill. The Rowallan defendants were dismissed by stipulation, presumably because the complaint was limited to post-conveyance events.

**4.** Morris alleged that he provided labor services and materials under the June 1999 contract but remained uncompensated. Accordingly, on September 1, 2000 he filed a lien on the neighboring claims. Citing AS 34.35.125, AS 34.35.050, and AS 34.35.140, Morris sought foreclosure of the owner's interests to satisfy his judgment.

**5.** State courts have at least concurrent jurisdiction with bankruptcy courts to consider the applicability of an automatic stay. *In re Mann,* 88 B.R. 427, 430 (Bankr.S.D.Fla.1988).

**6.** *Powell v. Tanner,* 59 P.3d 246, 248 (Alaska 2002) (citations omitted).

ing their non-debtor co-defendant McDonald. The automatic stay provision of the Bankruptcy Code is found in 11 U.S.C. § 362(a), which provides in relevant part:

> [A] petition filed under [the Bankruptcy Code] operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

It is clear that this language results in an automatic stay of proceedings against debtor defendants. The purpose of this provision is

> to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor.[7]

Courts have read §§ 362(a)(1) and 362(a)(3) in some instances to establish a stay against non-debtor co-defendants as well. These subsections will be considered in turn.

### 1. 11 U.S.C. § 362(a)(1)

Morris primarily relies on § 362(a)(1), which upon a filing stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." This subsection has been narrowly construed, and generally applies to the debtor, not to third-party defendants or co-defendants.[8] However, a limited exception exists for certain "unusual circumstances." [9] The seminal case on this issue, *A.H. Robins Co. v. Piccinin*, explains that these circumstances arise "when there is such *identity* between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant *will in effect be a judgment or finding against the debtor.*" [10] In other words, it is when the "debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law." [11]

There are numerous cases finding that certain relationships between co-defendants do not rise to the level of the identity of interest needed to apply the stay to a non-debtor co-defendant. The stay has been deemed inapplicable to defendants who are "independently liable, as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of duty." [12] Nor does the stay generally apply to "codebtors, guarantors, sureties, insurers . . . debtor's principals . . . partners, officers, directors, shareholders, or employees of the debtor." [13]

The classic example of "unusual circumstances"—where there is sufficient identity of interest—involves a "suit against a third-party who is entitled to *absolute indemnity*

---

7. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.1986). Morris's assertion of the stay in this case is far removed from any of these policy concerns. First, the statute was intended to protect debtors, not plaintiffs. Second, he seeks to invoke the stay against a non-debtor defendant.

8. *Id.* at 999.

9. *Id.*

10. *Id.* (emphasis added).

11. *Id.* (quoting *In re Metal Center*, 31 B.R. 458, 462 (Bankr.D.Conn.1983)).

12. *Id.* Courts have consistently rejected stays for joint tortfeasors. *See, e.g., Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126–28 (4th Cir.1983); *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1198–99 (6th Cir.1983); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544–46 (5th Cir.1983).

13. 9B Am.Jur.2d *Bankruptcy* § 1583 (1999) (collecting cases for each type of co-defendant).

by the debtor on account of any judgment that might result against them in the case." [14] Thus, the provision could stay a suit against officers or directors of a corporate debtor that was obligated to indemnify them for personal liability incurred while serving the corporation. [15] In that scenario, the judgment against the officers or directors would be indistinguishable from a judgment against the corporate debtor. Beyond this situation, courts have been reluctant to employ or extend this doctrine. [16]

■ Morris argues that the adjudication of McDonald's summary judgment should have been stayed under 11 U.S.C. § 362(a)(1) because the motion arose out of litigation with Gold Hill, and the grant of her motion "affected Gold Hill." However, he fails to put forth any argument on how his case resembles the "unusual circumstances" the law requires for a non-debtor defendant. [17] There is no allegation in his briefing nor suggestion in the record that the relationship between Gold Hill/Ascension and McDonald was one of absolute indemnification. Instead, Morris's complaint alleged that the defendants were "jointly and severally" liable. As explained above, a joint tortfeasor is "independently liable" and lacks an

identity of interest with its co-defendant. The joint tortfeasor is therefore not protected by the bankruptcy filing of a co-defendant. [18] Morris's own pleading establishes that a § 362(a)(1) stay of his action against McDonald would have been improper. We therefore reject his contention under this subsection.

■ A court may also grant a stay on equitable grounds when an absent bankrupt party is an indispensable party in the proceeding against the non-debtor defendant. We have stated:

> Except in unusual circumstances, an automatic bankruptcy stay under 11 U.S.C. § 362(a) applies to the debtor alone and not to non-bankrupt co-defendants. Therefore, severance of the bankrupt defendant from non-bankrupt co-defendants is allowable unless the bankrupt defendant is indispensable to the action. [19]

Civil Rule 42 grants trial courts the discretion to sever any claim or party, and Rule 19(b) lists the factors a court shall consider to determine if an absent party is indispensable. Bankruptcy courts have also used these factors to consider whether to stay an action against a non-debtor defendant on equitable grounds. [20]

14. *Piccinin,* 788 F.2d at 999 (emphasis added).

15. 1 David G. Epstein, Steve H. Nickles & James J. White, Bankruptcy § 3–10, at 135–36 (1992) (discussing *Piccinin,* 788 F.2d at 998–99).

16. *See id.* at 136 n. 11 ("The courts . . . will never agree to apply the *Piccinin* rule if the debtor is not absolutely bound, by contract or law, to indemnify or otherwise reimburse the non-debtor.") (citing cases).

17. Rather than argue an identity of interest between Gold Hill/Ascension and McDonald, Morris contends that a ruling on McDonald's motion "affected" the debtor defendants, "because a decision in her favor necessarily was a decision that Gold Hill owned the claims in 1999, and not McDonald." Morris's argument is not only factually dubious, it is also based on an erroneous legal standard. For example, he states without support that "[a]ny continuation of a proceeding which affects a debtor in a bankruptcy proceeding is stayed by 11 U.S.C. [§ ]362." But whether the debtor defendant is "affected" is simply not the correct legal test, as explained above.

Along these lines, Morris creates an either/or situation: "The ownership belongs to one or the

other. A decision for one party necessarily affects the other because there is no third option." Morris's either/or argument mistakenly places Gold Hill/Ascension and McDonald in adverse positions, whereas to obtain a stay with regard to McDonald, the law requires Morris to show that Gold Hill/Ascension and McDonald have essentially the *same* interest, such that a judgment against McDonald is tantamount to a judgment against Gold Hill/Ascension. Morris's line of argument is insufficient under bankruptcy law.

18. *See, e.g., Piccinin,* 788 F.2d at 999; *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1198–99 (6th Cir.1983).

19. *Patterson v. State, Dep't of Agric.,* 880 P.2d 1038, 1044 n. 12 (Alaska 1994) (citing *Cushman & Wakefield, Inc. v. Backos,* 129 B.R. 35, 36 (Bankr.E.D.Pa.1991)).

20. *See, e.g., Terry v. Chauffeurs, Teamsters & Helpers, Local 391,* 81 B.R. 394, 397–98 (Bankr. M.D.N.C.1987) (considering whether bankrupt defendant was indispensable party under Rule 19 of Federal Rules of Civil Procedure). The Alaska and federal versions of Rule 19 are essentially identical.

However, Morris made no showing that either Gold Hill or Ascension was an indispensable party to McDonald's summary judgment motion. The closest he came was to argue that he faced a "risk of inconsistent results" as to who was the true owner of the neighboring claims. But Morris offered no support for his proposition that a mere "risk of inconsistent results" mandates a stay. When this factor is considered in these situations, courts normally look for the risk of inconsistent relief for *defendants*, not plaintiffs.[21] This comports with the purpose of the § 362 stay—to protect debtor defendants.[22] As Morris failed to put forth any other reasons why Gold Hill or Ascension were indispensable parties, the superior court properly declined to grant a stay on these grounds.[23]

### 2. 11 U.S.C. § 362(a)(3)

Automatic stays are issued under § 362(a)(3) for "any act to obtain possession of property of the [bankruptcy] estate or of property from the estate or to exercise control over property of the estate." Property in the bankruptcy context includes all legal or equitable, tangible or intangible, interests of the debtor in property *"as of the commencement of the case."* [24] While Morris does not cite to this subsection directly, he hints at its underlying legal premise and discusses cases relying on it. Because he has insufficiently argued this point, we consider it waived.[25] We also note that there is no dispute that Ascension—not McDonald— owned the neighboring claims after June 2000. A determination of liability or no liability against McDonald therefore does not interfere with any property presently involved in a bankruptcy proceeding.

### B. The Superior Court Erred in Granting McDonald's Motion for Summary Judgment.

Morris next contends that the superior court erred in granting summary judgment on the merits. McDonald successfully moved for summary judgment below, arguing that she never owned the neighboring claims in her personal capacity, that she never acted for Gold Hill in anything but a representative capacity, and that Morris failed to assert any claims against McDonald personally.

Rather than responding on the merits, the bulk of Morris's opposition brief related to the automatic stay argument under bankruptcy law. However, he did contest McDonald's assertion that she was never the owner of the claims, stating that "her name appears as record owner." He elaborated on this contention in his subsequent motion for reconsideration, stating that "[t]he material question in this matter is who owned the mining claims that are the subject of this lawsuit beginning February 1999" and that Gold Hill "is a sole proprietorship name used by Annette McDonald."

On appeal, McDonald suggests that she was entitled to summary judgment based upon Morris's minimal statements in opposition to the merits of her summary judgment request. We reject this argument. A party is not entitled to summary judgment merely because its motion goes uncontested.[26] To obtain summary judgment, the moving party must prove that there is no genuine issue as

---

21. *See, e.g., id.; Piccinin,* 788 F.2d at 1000.

22. *See supra* note 7 and accompanying text.

23. Our conclusion that Gold Hill and Ascension were not indispensable parties is limited to the proceeding on the summary judgment motion brought by McDonald. Thus, if Morris later tries to sever his claims against McDonald and solely proceed against her while the other defendants remain in bankruptcy proceedings, the trial court may consider anew whether Gold Hill and Ascension are indispensable parties to the action.

24. *See* 11 U.S.C. § 541(a)(1); *Piccinin,* 788 F.2d at 1001 (emphasis added).

25. *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

26. *See Hinsberger v. State,* 53 P.3d 568, 572 (Alaska 2002); *Dome Labs. v. Farrell,* 599 P.2d 152, 159 n. 24 (Alaska 1979). Because Civil Rule 56(e) requires uncontested motions for summary judgment to be granted only "if appropriate," trial courts must still consider whether the law entitles the moving party to summary judgment.

to any material fact and that it is entitled to judgment as a matter of law.[27] Morris's statement that "her name appears as the record owner" was sufficient to alert the superior court that he contested an issue of material fact—that is, whether McDonald owned the land.

■ We conclude that the superior court erred in granting summary judgment because McDonald did not carry her burden of demonstrating the absence of a genuine issue of material fact. The issues raised by Morris—whether McDonald personally owned the neighboring claims during some of the key events described in the complaint and whether she acted solely in a representative capacity for Gold Hill—remain unresolved.[28] As explained below, McDonald's pleadings and attached documents, when viewed in the light most favorable to Morris, did not demonstrate that she acted solely in a representative capacity.

First, the October 1998 sales agreement and promissory note were entered into, respectively, by "ANNETTE R. MCDONALD et.al., D.B.A. Gold Hill Mining Company" and "ANNETTE R. MCDONALD ET.AL. DBA GOLD HILL MINING." However, by McDonald's own admission, at that point Gold Hill was not an incorporated entity in Alaska. McDonald has presented no documentation to show that she acted as a promoter or in a representative capacity for a pre-incorporated entity. Similarly, there is no evidence in the record that Gold Hill ratified or assumed the obligations of this transaction after its incorporation. There is also no indication whether the payments on the promissory

note were made by McDonald or by Gold Hill.

Second, the sales agreement and the promissory note were signed by McDonald's son, William, pursuant to a power of attorney. The power of attorney document authorized William to act on *McDonald's* behalf, not on behalf of the Gold Hill entity. There is no mention of Gold Hill in the power of attorney document. These facts support the view that McDonald entered into the sales contract and promissory note in her personal capacity.

■ Third, the February 1999 quitclaim deeds refer to the grantee as "Annette R. McDonald et. al. DBA Gold Hill Mining." In this description of the grantee, Gold Hill Mining lacks any term designating its existence as a corporate entity, such as "Corporation" or "Company."[29] The address listed for the grantee is inconclusive regarding the true grantee—the corporate address for Gold Hill is the same as McDonald's personal address. Moreover, the facts are unclear as to whether Gold Hill was incorporated in Alaska at that time. While McDonald's motion for summary judgment alleged that Gold Hill was properly incorporated on October 20, 1998, she offered no documentary evidence to support this claim. We have noted that "[a]ssertions of fact in unverified pleadings and memoranda cannot be relied upon in a motion for summary judgment."[30] The quitclaim deeds leave open the possibility that McDonald was acting in her personal capacity.

Fourth, and finally, the documents relating to the June 2000 conveyance of the claims to Ascension strongly support the view that Mc-

---

**27.** *Powell v. Tanner*, 59 P.3d 246, 248 (Alaska 2002).

**28.** Because the causes of action in the complaint are premised on *conduct*, not mere ownership, it is not necessarily the case that McDonald would be liable if she indeed owned the land. However, if the lower court should find that she was the true owner, her role in this case is transformed from an ordinary corporate officer to something more complicated—such as, for example, an owner, a partner, a lessor, or a licensor. If she was just acting as corporate officer, she generally would not be liable for the acts of her corporation. *See, e.g., Carver v. Quality Inspection & Testing, Inc.*, 946 P.2d 450, 455 (Alaska 1997)

(citing 3A Fletcher Cyclopedia of the Law of Private Corporations § 1117 (rev. ed.1994)). On the other hand, if her role went beyond a mere representative capacity, Morris's complaint can be viewed as alleging personal liability against McDonald for the wrongdoing of the developers.

**29.** The Alaska Corporations Code is unequivocal that a "corporate name must contain the word 'corporation', 'company', 'incorporated', or 'limited', or an abbreviation of one of those words." AS 10.06.105(a).

**30.** *Martinez v. Ha*, 12 P.3d 1159, 1162 n. 11 (Alaska 2000) (quoting *Jennings v. State*, 566 P.2d 1304, 1309–10 (Alaska 1977)).

Donald owned the claims in her personal capacity during the preceding time period. The quitclaim deed for that conveyance and the filing with the Alaska Recorders Office both referred to the grantor as simply "Annette R. McDonald," with no mention of Gold Hill. Similarly, a letter from Ascension's attorney to the Bureau of Land Management shortly after the conveyance purports to remit fees for the transfer of "claims formerly held by Annette R. McDonald."

In light of these documents and the absence of other documents that could have supported McDonald's position that she acted solely in a representative capacity, we conclude that the issue of ownership presents a genuine issue of material fact.

As McDonald failed to carry the burden in resolving this contested issue (and given that McDonald was the party better suited to put forth relevant documents to explain her relationship with the debtor defendants), we reverse the grant of summary judgment by the superior court.

## V. CONCLUSION

Because federal bankruptcy law does not require the superior court to stay its hand in ruling on a motion pertaining to a non-debtor co-defendant, the superior court did not err in proceeding. However, because material facts are in dispute concerning McDonald's status, we REVERSE the superior court's grant of summary judgment.