**Maurice MITCHELL, Appellant,**

v.

**TECK COMINCO ALASKA INCORPORATED,**
**Appellee.**

No. S–12530.

Supreme Court of Alaska.

Sept. 26, 2008.

**754**

Kenneth W. Legacki, Kenneth W. Legacki, P.C., Anchorage, for Appellant.

Sean Halloran, Hartig Rhodes Hoge & Lekisch, PC, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Teck Cominco Alaska Incorporated is the operator of the Red Dog Mine ("Mine"), which is remotely located in the Kotzebue area on lands owned by NANA Regional Corporation, Inc. Teck Cominco fired Maurice Mitchell from his job as a warehouse supervisor at the Mine after concluding that Mitchell had sexually harassed a contractor's employee and lied during the ensuing investigation. Mitchell sued Teck Cominco, asserting a statutory claim for race-based discrimination and contract claims for breach of the covenant of good faith and fair dealing and wrongful discharge.

Teck Cominco immediately moved to dismiss Mitchell's discrimination claim, and the superior court later converted the dismissal motion into a summary judgment motion. Mitchell filed affidavit testimony and requested additional time to conduct planned discovery to further contest summary judgment. Teck Cominco did not oppose the request or otherwise submit any evidence to support its converted motion. The court never ruled on Mitchell's continuance request, but six months later, while the parties were still conducting discovery, the court granted the converted motion for summary judgment on Mitchell's discrimination claim.

Mitchell then asked the assigned judge to disqualify himself because the judge's wife is a NANA shareholder; the judge did not disqualify himself. The court granted Teck Cominco's subsequent motion for summary judgment on Mitchell's claim for breach of the covenant of good faith and fair dealing and simultaneously denied Mitchell's cross-motion on that claim and on his wrongful discharge claim. The court entered final judgment and awarded Alaska Civil Rule 68 attorney's fees to Teck Cominco. Mitchell appeals.

We vacate the grant of summary judgment for Teck Cominco on Mitchell's discrimination claim because the superior court should have granted Mitchell's request for additional time to oppose it. We reverse the grant of summary judgment for Teck Cominco on Mitchell's good faith and fair dealing claim because material issues of fact precluded summary judgment, and we affirm the denial of summary judgment to Mitchell on both contract claims for the same reason. In light of these rulings, we vacate the final judgment and the award of attorney's fees in favor of Teck Cominco and remand for further proceedings on all of Mitchell's claims. Finally, we remand for renewed consideration of the judicial disqualification issue.

## II. FACTS AND PROCEEDINGS

### A. Facts

Maurice Mitchell is an African–American who had worked for Teck Cominco at the Mine for fifteen years before he was fired in May 2005. In early 2005 Mitchell noticed L.B., an employee of a contractor at the Mine; he wanted to meet her and have a personal relationship with her. Mitchell's friend Carla W. knew L.B., and he asked Carla to approach L.B. to see if L.B. might be interested in getting to know him. Carla and Mitchell exchanged suggestive e-mails about L.B., and in one of them Mitchell mentioned summer work in the warehouse and the possibility that he might be able to help L.B. if she needed work.

Carla talked to L.B. in April 2005. According to Carla, she told L.B. that Mitchell was interested in meeting her and that Teck

Cominco hired people for the summer. Carla later maintained that she did not link the possible employment and a relationship with Mitchell; she "made sure [L.B.] knew it was separate." L.B. interpreted the job possibility and relationship with Mitchell as linked, although she later acknowledged that Carla did not express a linkage. L.B. did not respond to Carla's inquiries on Mitchell's behalf and did not apply for a job with Teck Cominco.

Mitchell continued to be interested in L.B. and again e-mailed Carla about her. In May 2005 Carla wrote a note to L.B. about Mitchell: "He wanted to know if you were interested and I told him he would have to talk to you.... [I]f you decide to get involved or not with that situation, could you please let him know? Or if you want me to tell him something, let me know.... His name is Maurice Mitchell and he is the warehouse supervisor." Carla signed the note "Carlitta" and left it at L.B.'s dormitory. L.B. complained to her supervisor after seeing the note. L.B. and her supervisor then spoke with Jim Somers in Teck Cominco's human resources department. L.B. was asked to write a statement summarizing her complaint.

Somers and Jeff Sheardown, a Teck Cominco superintendent, then met briefly with Mitchell as he was about to fly home from the Mine at the end of his regular work rotation. The parties dispute what happened at the meeting; no one took notes or recorded the conversation. Mitchell asserts that no one told him he had been accused of offering a job in exchange for sex. The parties agree that Mitchell was shown a copy of the note Carla wrote to L.B. and that Mitchell asked who "Carlitta" was. Mitchell stated in an affidavit that during the meeting he denied having anything to do with writing the note; Somers testified at a deposition that Mitchell denied asking Carla to approach L.B. "on his behalf about possibilities of a summer job and of hooking up."

Teck Cominco continued its investigation after Mitchell left the Mine on rotation. Company e-mails between Mitchell and Carla were reviewed. Carla was interviewed about whether Mitchell had asked her to offer L.B. a job in exchange for sex. Carla prepared a short written statement at Somers's request, reflecting Carla's position that her discussion with L.B. about a summer warehouse position was separate from her discussion about Mitchell's personal interest in L.B. Teck Cominco did not contact Mitchell again during its investigation.

Robert Scott, then Teck Cominco's general manager at the Mine, decided to terminate Mitchell's employment based on the conclusion that Mitchell had offered L.B. a job in exchange for sex and had lied about it during the investigation. In its May 25, 2005, termination letter to Mitchell, Teck Cominco informed Mitchell that: (1) allegations that he tied a job offer to a personal relationship had "merit"; (2) he had been "considerably less than candid" when asked about the allegations; and (3) even if the allegations were not true, his "willingness to misrepresent facts to the detriment of [his] employer" would have been cause for discipline. Teck Cominco also stated that its reasons for firing Mitchell were "exacerbated" by his abuse of company e-mail and non-solicitation policies.

## B. Proceedings

In late July 2005 Mitchell sued Teck Cominco in superior court, alleging race-based disparate treatment, breach of the implied covenant of good faith and fair dealing, and wrongful termination. In August 2005 Teck Cominco filed an answer to Mitchell's complaint and moved to dismiss Mitchell's discrimination claim for failure to state a claim upon which relief could be granted.[1] At the same time, Teck Cominco served Mitchell with an Alaska Civil Rule 68 Offer of Judgment in the amount of twelve dollars. Mitchell opposed the motion to dismiss, supporting his opposition with an affidavit denying that he had offered a job in exchange for sex and stating that he knew of numerous individuals who were not African–American who had sexually harassed employees but had not been terminated. Teck Cominco replied in September 2005 without submitting any evidence.

1. *See* Alaska R. Civ. P. 12(b)(6).

The superior court held a scheduling conference on October 17, 2005. Mitchell told the court that he had filed a discrimination complaint with the federal Equal Employment Opportunity Commission and would advise the court within thirty days whether he would proceed with the lawsuit. Mitchell later advised that he would proceed with the lawsuit. In January 2006 the court converted Teck Cominco's dismissal motion into a motion for summary judgment because it intended to consider Mitchell's affidavit. The court gave Mitchell twenty days to submit additional opposition to the converted motion and gave Teck Cominco five days thereafter to file a reply.[2]

Mitchell filed supplemental opposition arguing both that summary judgment was premature because discovery had not been completed and that his second affidavit (filed with the supplemental opposition) contained additional facts sufficient to defeat summary judgment. Mitchell provided material to the superior court referencing an upcoming deposition schedule and asked the court to hold the summary judgment motion in abeyance until discovery was complete. Although Mitchell did not make a separate motion under Alaska Civil Rule 56(f),[3] he cited and discussed the rule in his supplemental opposition. Teck Cominco did not oppose Mitchell's request for a Rule 56(f) continuance and filed nothing further in connection with the converted motion for summary judgment.

On July 7, 2006, without having ruled on Mitchell's request to hold the motion in abeyance pending completion of the scheduled discovery, the superior court granted Teck Cominco's converted motion for summary judgment. The court concluded that Mitchell had not made a prima facie case of discrimination because he had not presented admissible evidence that Teck Cominco had treated him less favorably than other similarly situated employees outside his protected class. The court stated in a footnote that Mitchell had not filed a Rule 56(f) continuance motion and had not filed any supplemental briefing based on depositions that had been conducted in February 2006.

Mitchell requested reconsideration, noting that he had asked for a Rule 56(f) continuance to oppose summary judgment but that the court had not ruled on it, and attaching some deposition transcripts and other discovery material reflecting his discovery efforts. The court denied reconsideration, stating that it had ruled on the summary judgment motion five months after Mitchell filed his supplemental opposition and that "plaintiff could have requested [that the court] take notice of any supplemental discovery [he] wished to file between January 30 and July 7, 2006."

Shortly thereafter, Mitchell advised assigned Superior Court Judge Richard H. Erlich that he recently had become aware that Judge Erlich's wife owned stock in NANA Regional Corporation and that under a case this court decided in 2002,[4] she therefore had a financial interest in the outcome of litigation involving the Mine. Mitchell indicated this probably required Judge Erlich's disqualification. Judge Erlich declined to disqualify himself, finding that although his wife was a NANA shareholder, her annual NANA dividend of $200 to $300 was *de minimis* and did not justify his recusal. Judge Erlich also

**2.** *Cf.* Alaska R. Civ. P. 12(b) which provides, in part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**3.** Alaska R. Civ. P. 56(f) provides:

> When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**4.** *See Reich v. Cominco Alaska, Inc.,* 56 P.3d 18, 23–25 (Alaska 2002) (NANA shareholders have imputed direct financial interest in the outcome of litigation involving the Mine and are excluded as jurors under former Alaska R. Civ. P. 47(c)(12)).

considered whether his wife's stock ownership could cause his impartiality to reasonably be questioned and concluded that it could not. He requested review of his decision, as required by AS 22.20.020(c),[5] and Superior Court Judge Michael I. Jeffery reviewed and affirmed Judge Erlich's decision.

Teck Cominco then filed a motion for summary judgment on Mitchell's contract claim for breach of the covenant of good faith and fair dealing. Mitchell filed a cross-motion for summary judgment on that claim and on his contract claim for wrongful termination. Teck Cominco argued that it was entitled to judgment as a matter of law because (1) it had conducted an investigation, there were no minimal contractual or legal standards specifying how the investigation needed to be conducted, and Mitchell's termination was the result of the conclusions drawn from that investigation; and (2) the court had already ruled that Mitchell had not been subjected to disparate treatment. Mitchell argued that he was entitled to judgment as a matter of law because (1) he in fact had not engaged in the conduct of which he was accused, making his termination per se unlawful; (2) Teck Cominco did not conduct a fair and impartial investigation of the allegations against him, in violation of its personnel policies; and (3) Teck Cominco treated Mitchell more severely than other employees who had violated its sexual harassment policy.

The court granted Teck Cominco's motion for summary judgment and denied Mitchell's cross-motion. The court determined that Mitchell's conduct violated Teck Cominco's sexual harassment policy because of the note Carla had written to L.B. after L.B. had ignored her first overture, stating: "If there had been ... no subsequent contact and [L.B.] made no response to the offer that had been communicated—all right—there would have been no case." The court found that because Mitchell was confronted with Carla's note, Mitchell "had clear indication of what the issues were ... prior to the termination." As to disparate treatment, the court decided that the two incidents factually closest to Mitchell's situation (and supporting Mitchell's arguments) were not relevant, one occurring too long before Mitchell's termination and the other occurring after the termination. Apparently considering Mitchell's contract claim for wrongful termination dismissed along with the contract claim for breach of the covenant of good faith and fair dealing, the court later entered final judgment and, based on Teck Cominco's nominal Rule 68 offer of judgment, awarded Teck Cominco Rule 68 attorney's fees.

Mitchell appeals the summary judgment rulings, Judge Erlich's refusal to recuse himself, and the award of Rule 68 attorney's fees based on the nominal offer of judgment.

## III. STANDARD OF REVIEW

 A Rule 56(f) decision is reviewed for an abuse of discretion.[6] An abuse of discretion exists when we are left with the definite and firm conviction that a mistake has been made.[7]

[3–6] We review a grant of summary judgment de novo.[8] Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law.[9] When factual disputes exist, the non-movant's version of the facts must be accepted as true and capable of proof, and we make no attempt to weigh the evidence or evaluate witness credibility.[10]

---

5. AS 22.20.020(c) provides, in relevant part:

 If a judicial officer denies disqualification the question shall be heard and determined by another judge assigned for the purpose by the presiding judge of the next higher level of courts or, if none, by the other members of the supreme court. The hearing may be ex parte and without notice to the parties or judge.

6. *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005) (quoting *Kessey v. Frontier Lodge, Inc.*, 42 P.3d 1060, 1062 (Alaska 2002)).

7. *Dougan v. Aurora Elec. Inc.*, 50 P.3d 789, 793 (Alaska 2002) (citing *Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991)).

8. *Miller v. Safeway, Inc.*, 170 P.3d 655, 658 (Alaska 2007) (citing *DeNardo v. Bax*, 147 P.3d 672, 676 (Alaska 2006)).

9. *Id.*

10. *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1167 n. 3 (Alaska 1998).

All reasonable inferences to be drawn from the facts presented must be drawn in favor of the non-moving party.[11]

■■■■■ A trial judge's decision not to recuse is reviewed on appeal for abuse of discretion.[12] We "will not overturn a judge's decision unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts."[13] Interpretation of a statute is a question of law to which we apply our independent judgment, interpreting the statute according to reason, practicality, and common sense.[14] When interpreting a statute, we consider the meaning of the statute's language, its legislative history, and its purpose.[15]

## IV. DISCUSSION

### A. The Superior Court Should Have Granted Mitchell's Civil Rule 56(f) Request for Additional Time to Conduct Discovery and Respond to Teck Cominco's Motion.

■■■■■ Teck Cominco's dismissal motion was filed within a month of Mitchell's complaint. Our civil rules contemplate that dismissal motions will be filed early in litigation because they generally are decided on the pleadings; indeed, to expedite the resolution of litigation some dismissal motions may be filed before a pleading.[16] Summary judgment motions, on the other hand, may require that parties spend considerable time and effort discovering and developing facts necessary for a full presentation, and for this reason courts must give the parties a reasonable opportunity to present all pertinent material after converting a Rule 12(b)(6) motion into a Rule 56 motion.[17]

■■■■■ Rule 56 itself permits a party opposing summary judgment to request additional time to gather and submit evidence to support its opposition.[18] "We have repeatedly held that 'requests made under Rule 56(f) should be granted freely because Rule 56(f) provides a safeguard against premature grants of summary judgment.'"[19] A request for a Rule 56(f) continuance need not be made in a separate motion,[20] but to receive a continuance a party (1) must unambiguously request relief on Rule 56(f) grounds, although Rule 56(f) itself need not be specifically mentioned; (2) must not have been dilatory during discovery; and (3) must provide adequate reasons why additional time is needed.[21] Mitchell met all three requirements and was entitled to a continuance.

First, Mitchell unambiguously requested Rule 56(f) relief in his supplemental opposition, specifically requesting that the court hold the motion in abeyance so he could gather more information during planned discovery, and specifically citing Rule 56(f) and a case construing it. Mitchell's proposed order expressly stated that the court would hold the summary judgment motion in abeyance pending completion of discovery and additional briefing, and set a briefing schedule to begin twenty days after the scheduled July 20, 2006, close of discovery.

Second, Mitchell had not been dilatory with discovery. When the court converted the motion on January 10, 2006, the case was less than six months old. The pretrial scheduling conference had been conducted about

---

11. *Id.*

12. *Amidon v. State*, 604 P.2d 575, 577 (Alaska 1979) (citing *United States v. Haldeman*, 559 F.2d 31, 139 (D.C.Cir.1976)).

13. *Id.*

14. *State v. Jeffery*, 170 P.3d 226, 229–30 (Alaska 2007).

15. *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006) (quoting *Marshall v. First Nat'l Bank of Alaska*, 97 P.3d 830, 834 (Alaska 2004)).

16. *See* Alaska R. Civ. P. 12(b).

17. *See Demmert v. Kootznoowoo, Inc.*, 960 P.2d 606, 611–12 (Alaska 1998); Alaska R. Civ. P. 12(b).

18. *See supra* note 3.

19. *Hymes*, 119 P.3d at 965 (quoting *Ball v. Birch, Horton, Bittner & Cherot*, 58 P.3d 481, 489 (Alaska 2002)).

20. *Id.* (quoting *Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998)).

21. *Id.* (quoting *Parson*, 960 P.2d at 618).

three months earlier, but proceedings apparently then went on informal hold for the next thirty days while Mitchell decided whether to proceed with the lawsuit or seek remedies through the Equal Employment Opportunity Commission. Mitchell's decision to proceed with the lawsuit came about forty-five days before the court's conversion of the motion, and by then the parties had already been in contact about a discovery schedule. Discovery was set to close on July 20, 2006.

Third, Mitchell provided adequate reasons why he needed additional time to oppose summary judgment. He noted that the conversion of the dismissal motion came before discovery had been completed, advised the court that the parties were in the process of setting up a deposition schedule, and even described some of the information he was trying to discover. It is noteworthy that in conformance with his representations to the court, Mitchell then conducted at least nine depositions between February and May 2006 and participated in others that Teck Cominco conducted.

Teck Cominco asserts that the court had no reason to grant the Rule 56(f) request because Mitchell had ample opportunity to submit additional evidence during the time the court had the summary judgment motion under advisement. But without an order from the trial court authorizing or setting a deadline for additional filings, Mitchell had no way of knowing when the court would rule on the motion or whether the court would accept more filings in addition to those it had already authorized. By failing to promptly rule on Mitchell's Rule 56(f) request, the superior court left the parties without guidance about whether supplemental filings would be permitted or when they would be due.

Teck Cominco also argues that the court's error, if any, is moot or harmless. According to Teck Cominco, Mitchell presented the evidence of inconsistent discipline—which he would have relied on to show disparate treatment in his discrimination claim—when the parties filed cross-motions for summary judgment on the covenant of good faith and fair dealing claim, and the court still entered judgment against Mitchell, making the issue moot. But the court's error is neither harmless nor moot in light of our reversal of the court's later summary judgment ruling, discussed in the next section of this opinion. Moreover, the legal standards for the two claims are different and require the evaluation of evidence in light of both standards.[22] Finally, in the course of discovery Mitchell obtained evidence that appears to support his claim that Teck Cominco treated persons outside his protected class more favorably than it treated Mitchell.

In connection with the later cross-motions for summary judgment on his contract claims, Mitchell presented newly discovered evidence that a white supervisor at Teck Cominco sexually harassed a female employee of a contractor but only received a disciplinary letter in his personnel file instead of termination. The superior court indicated that it did not consider the evidence relevant because the incident occurred after Mitchell's termination. But the fact that the more lenient discipline happened after Mitchell was fired does not necessarily make it irrelevant to Mitchell's claims. Federal courts have compared a Title VII plaintiff's discipline to discipline that happened after the plaintiff's termination.[23] Thus the superior court's failure to grant Mitchell's Rule 56(f) request actually prejudiced Mitchell.[24]

**22.** *Compare Charles v. Interior Reg'l Hous. Auth.,* 55 P.3d 57, 62–63 (Alaska 2002) (noting that covenant of good faith and fair dealing requires that employer treat like employees alike), *with Haroldsen v. Omni Enters., Inc.,* 901 P.2d 426, 430 (Alaska 1995) (setting out three-part test for racial discrimination claims).

**23.** *See Bio v. Fed. Express Corp.,* 424 F.3d 593, 594–95, 598 (7th Cir.2005) (holding that plaintiff in Title VII case could not show less favorable treatment when other employee, fired five months after plaintiff, was fired after receiving

same number of disciplinary notices); *Lynn v. Deaconess Med. Ctr.-W. Campus,* 160 F.3d 484, 485–88 (8th Cir.1998) (comparing discipline of plaintiff in Title VII case to discipline of similar employee whose discipline happened four months after plaintiff's forced resignation).

**24.** A detailed showing of prejudice is not necessary for reversal of a wrongful dismissal of a Rule 56(f) motion. *See Demmert,* 960 P.2d at 612 (holding it "is inappropriate to require a detailed showing of prejudice from a party who has not had a reasonable opportunity to oppose a

■ Based on the foregoing, we are left with a definite and firm conviction that the superior court made a mistake in failing to grant Mitchell's Rule 56(f) request, and we vacate the entry of summary judgment and remand for further proceedings on Mitchell's race-based disparate treatment claim.[25] On remand, the superior court must identify the appropriate comparison group for Mitchell's claim. The superior court previously determined that "employees who are situated similarly to Mr. Mitchell are non-African-American supervisors or managers determined by Cominco to have violated the company's sexual harassment policy." This is unduly narrow; under this standard an employer could engage in blatant discrimination by never determining that a class of employees violated company policy, but always escape a finding of discrimination on that basis. For persons to be similarly situated for a comparison in a Title VII case, the plaintiff must establish that he was treated differently from similarly situated persons whose conduct was comparable in all material respects.[26] This requires that members of the comparison group engage in similar conduct, not that the employer finds they have done so.[27] In disparate treatment discipline cases, the offenses do not need to be identical, but they should be of "comparable seriousness."[28] Thus in further proceedings after remand, the superior court should evaluate whether the conduct of the persons to whom Mitchell compares himself is of comparable seriousness to the conduct he committed, and then evaluate Teck Cominco's response to that conduct.

**B. The Superior Court Should Not Have Granted Summary Judgment to Teck Cominco on Mitchell's Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

■ At-will employment contracts in Alaska include an implied covenant of good faith and fair dealing.[29] The covenant does not have a precise definition but generally requires employers to treat like employees

---

motion for summary judgment" due to the court's failure to grant a Rule 56(f) continuance).

25. Although we vacate the superior court's summary disposition of Mitchell's discrimination claim on Rule 56(f) grounds, we also note that the effect of the court's conversion order was to stand summary judgment procedure on its head. Teck Cominco did not submit any evidentiary materials with its original Rule 12(b)(6) motion or with its Rule 12(b)(6) reply memorandum. After the court converted the dismissal motion into a summary judgment motion and gave Teck Cominco the opportunity to file a reply to Mitchell's supplemental opposition, Teck Cominco filed nothing at all. The court then ruled that Mitchell had failed to present sufficient admissible evidence to establish a prima facie case for discrimination under his disparate treatment theory and summarily dismissed his claim.

But a party seeking summary judgment has the initial burden of proving, through admissible evidence, that there are no disputed issues of material fact and that the moving party is entitled to judgment as a matter of law. *Shade v. Co & Anglo Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995) (noting that courts should be mindful of burdens of proof to avoid premature grant of summary judgment). When the moving party does not meet its burden, the non-moving party need not present any opposing evidence at all. *See Weaver Bros. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984). Only when the moving party establishes a prima facie case for summary judgment is the non-moving party required to come forward with contradictory evidence to prevent the entry of summary judgment. *Preblich v. Zorea*, 996 P.2d 730, 733 (Alaska 2000) (quoting *Jennings v. State*, 566 P.2d 1304, 1309 (Alaska 1977)).

Here, Teck Cominco obtained summary judgment on a factual issue without submitting any admissible evidence whatsoever, relying only on assertions of fact in its memoranda. *Cf. Brock v. Rogers & Babler, Inc.*, 536 P.2d 778, 783 (Alaska 1975) (assertions of fact in pleadings and legal memoranda cannot be relied upon for summary judgment purposes). When converting a dismissal motion to a summary judgment motion, trial courts must ensure that the appropriate parties bear the burdens of proof and persuasion.

26. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir.2006); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000).

27. *See Graham*, 230 F.3d at 40.

28. *Id.; see also Lynn*, 160 F.3d at 488 (noting requirement that employee engage in exact same offense could result in scenario in which treatment of employee who committed more serious offense could never be relevant to proof of discrimination).

29. *See Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1012 (Alaska 1999) (citing *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

alike and act in a manner that a reasonable person would regard as fair.[30] The covenant has both a subjective and an objective component: the subjective component "prohibits an employer from terminating an employee for the purpose of depriving the employee of the contract's benefits," and the objective component "prohibits the employer from dealing with the employee in a manner that a reasonable person would regard as unfair."[31] Mitchell's claim for breach of the covenant is under the objective component because he contends that Teck Cominco treated him unfairly in its investigation of the sexual harassment allegations and disciplined him more severely than it did other employees.

Teck Cominco based its summary judgment motion on its contentions that (1) it conducted an investigation that was legally sufficient to meet its obligation under its policies and procedures; (2) based on the facts available through its investigation, it reasonably could have concluded that Mitchell had offered a job to L.B. in exchange for sex, making his denial of wrongdoing irrelevant; and (3) the court's grant of summary judgment on Mitchell's discrimination claim was a determination that it had not treated Mitchell disparately.

Teck Cominco agrees that under its policies and procedures, it was required to investigate the sexual harassment allegations against Mitchell before firing him. At oral argument before us Teck Cominco conceded that the implied covenant requires some minimal level of fairness to the employee during an employer's investigation. Mitchell testified that his interview lasted no more than five minutes and that he was never told that he was accused of offering a woman a job in exchange for sex or that he was being investigated for sexually harassing L.B. Somers testified that it would be "reasonable" to ask an employee being investigated to tell his side of the story and acknowledged that he had not given Mitchell this opportunity. If even this limited testimony is accepted and viewed in the light most favorable to Mitchell, it shows that Teck Cominco never advised him of the allegations against him and never gave him a fair opportunity to present his side of the story. This creates a triable issue of fact of whether, considering all of the circumstances, Teck Cominco conducted a fair and reasonable investigation.[32]

■ Mitchell also created a triable issue of fact about whether he was disparately treated. Mitchell presented evidence of several Teck Cominco employees who apparently violated the company's sexual harassment policy but were disciplined less severely than Mitchell. Teck Cominco did not assert that Mitchell's factual allegations were inaccurate, but rather argued that Mitchell's disparate treatment claim under the covenant of good faith and fair dealing was the same as under his already dismissed race discrimination claim. As noted above, the legal standards for the two claims are different[33]—an employer can breach the covenant of good faith and fair dealing when it treats members of the *same* class disparately.[34] At a minimum, Mitchell's example of the white supervisor who sexually harassed a contractor's employee and whose discipline consisted of a letter of warning created a triable issue of fact about whether Teck Cominco treated Mitchell disparately. The fact that this incident happened after Mitchell's firing does not make it irrelevant.[35]

**30.** *Id.* at 1012–13.

**31.** *Id.* at 1013 (citing *Luedtke v. Nabors Alaska Drilling, Inc.,* 834 P.2d 1220, 1223–24 (Alaska 1992)).

**32.** The reasonableness of any investigation is a fact-dependent question and may depend on the strength of the evidence of the underlying infraction. Here, Mitchell strenuously denies that he offered L.B. a job in return for sex and contends he was "fired for something he never did." An unreasonable or unfair investigation may lead to an unreasonable conclusion, although this is not always the case. But having concluded that there is a triable issue of fact about the fairness and reasonableness of Teck Cominco's investigation, the reasonableness of Teck Cominco's conclusion is also a triable issue of fact.

**33.** *See supra* note 22.

**34.** *See Charles,* 55 P.3d at 62.

**35.** The superior court also discounted another of Mitchell's examples because, according to the trial court, the incident happened seventeen years prior to Mitchell's termination. Mitchell contends that the record does not support this

We therefore vacate the superior court's entry of summary judgment for Teck Cominco on Mitchell's contract claims.[36]

## C. Material Issues of Fact Precluded Summary Judgment on Mitchell's Cross–Motion.

Mitchell asked the superior court to grant him summary judgment on his contract claims that Teck Cominco violated the covenant of good faith and fair dealing and wrongfully terminated his employment. He offered evidence that Teck Cominco had not disciplined or terminated other employees for sexual harassment, and Teck Cominco did not dispute his evidence. Mitchell also argued that because he did not engage in quid pro quo sexual harassment as a matter of fact or law, Teck Cominco breached its employment contract with him as a matter of law. Finally, he argued that as a matter of law Teck Cominco breached the covenant of good faith and fair dealing because it did not give Mitchell an opportunity to tell his side of the story during the investigation. Mitchell asks us to reverse the court's denial of his summary judgment motion.

We conclude that the superior court properly denied Mitchell's summary judgment motion because disputed factual issues prevented entry of summary judgment on his claims. A party is not entitled to summary judgment simply because the non-moving party does not oppose summary judgment,[37] so the fact that Teck Cominco did not dispute some of the evidence Mitchell presented about other employees who engaged in sexual harassment does not mean that he is automatically entitled to summary judgment on that issue.

Accepting and viewing the evidence in the light most favorable to Teck Cominco, as we must do when we evaluate Mitchell's motion: (1) Carla, at Mitchell's request, discussed both a summer job with Teck Cominco and a personal relationship with Mitchell, thus implicitly linking the two when she talked to L.B.; (2) Teck Cominco promptly and reasonably investigated L.B.'s complaint; (3) Teck Cominco reasonably concluded that Mitchell's conduct violated its sexual harassment policy; and (4) Teck Cominco reasonably terminated Mitchell because of his underlying conduct, his lack of candor during the investigation, and his abuse of company e-mail. This precludes the grant of Mitchell's cross-motion for summary judgment on his contract claims.

## D. We Remand for Further Consideration of Judicial Disqualification.

By letter dated July 27, 2006, Mitchell's counsel advised Second Judicial District Presiding Judge Michael I. Jeffery and Judge Erlich that it had "recently come to [his] attention that Judge Erlich may have a conflict" and "probably should disqualify himself" from the case under Alaska Code of Judicial Conduct Canon 3 E(1)(c)(i).[38] Specifically, counsel referenced Judge Erlich's wife's ownership of NANA stock and *Reich*

---

finding, and our review of the record did not reveal when that incident happened.

**36.** Having vacated the superior court's entries of summary judgment in favor of Teck Cominco, we also vacate the final judgment and the award of attorney's fees and costs in favor of Teck Cominco. We therefore do not need to decide whether Teck Cominco's Rule 68 offer of judgment was valid.

**37.** *Morris v. Rowallan Alaska, Inc.*, 121 P.3d 159, 164 (Alaska 2005).

**38.** Alaska Code of Judicial Conduct Canon 3 E provides in part:

E. Disqualification.
(1) Unless all grounds for disqualification are waived as permitted by Section 3F, a judge

shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
. . . .
(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent, or child wherever residing, or any other member of the judge's family residing in the judge's household:
(i) has an economic interest in the subject matter in controversy. . . .
Alaska Code of Judicial Conduct Canon 5 Commentary, Terminology defines "economic interest" as follows:
"Economic interest" means ownership of a more than de minimis legal or equitable interest or a relationship as an officer, director, advisor, or other legal participant in the affairs of a party. . . .

*v. Cominco Alaska, Inc.*[39] In *Reich,* we upheld a trial court's decision to exclude NANA stockholders as jurors in an employment discrimination case against Teck Cominco because NANA had a direct financial interest in the outcome of the case that could be imputed to its shareholders, even though NANA was not a party to the case.[40] Former Alaska Civil Rule 47(c)(12)[41] permitted challenges for cause for jurors with "a financial interest ... in the outcome of the case." We adopted a per se rule disqualifying as jurors shareholders of a non-party corporation that has a financial interest in the outcome of the litigation.[42]

In Mitchell's case, Judge Erlich held a hearing on August 2, 2006, and indicated that he would consider the letter as a motion for disqualification. He later denied the motion in a written order. Judge Erlich noted that his wife owned two hundred shares of NANA stock and received a dividend of between $200 and $300 per year, but that she was "not a director or officer" or "employed by [NANA]." Judge Erlich stated that his wife was otherwise employed and received a salary in the range of $60,000 to $70,000 per year. Judge Erlich's salary as a superior court judge is in excess of $152,760 per year.[43] Thus, the impact of the NANA dividends on the Erlich family annual income was perhaps one-tenth of one percent of the Erlichs' salaries. Judge Erlich first determined that his wife's interest was *de minimis* under the Code of Judicial Conduct. He then considered whether he should be disqualified under the Code's mandate that he disqualify himself if his impartiality could be reasonably questioned or under AS 22.20.020(a)(9), which prohibits a judicial officer from acting in a matter when he or she feels "a fair and impartial decision cannot be given." He determined that he could be both objectively and subjectively impartial.

Pursuant to AS 22.20.020(c), Judge Jeffery was appointed to review Judge Erlich's decision. Judge Jeffery agreed that the NANA dividends were *de minimis* under the Code of Judicial Conduct and that Judge Erlich could be, and could be seen as, impartial. But he also considered AS 22.20.020(a)(4) as another possible basis for Judge Erlich's disqualification. Subsection .020(a)(4) provides that a judicial officer may not act in a matter in which the judicial officer or his or her spouse "has a direct financial interest in the matter."[44] Judge Jeffery decided that the Code of Judicial Conduct's *de minimis* exception was an appropriate limitation on subsection .020(a)(4) and did "not infringe on the substantive right to have a judicial officer who is actually impartial and who also appears to be impartial." Judge Jeffery distinguished *Reich* on the basis that the court rule for juror disqualification does not have a *de minimis* exception, while the Code of Judicial Conduct does. Judge Jeffery affirmed Judge Erlich's decision.

Mitchell argues to this court that subsection .020(a)(4) requires Judge Erlich's disqualification in his case, relying chiefly on federal cases construing the federal judicial disqualification statute to require recusal even when the judge's interest is extremely small. Mitchell's reliance on federal cases is misplaced. The federal counterpart to subsection .020(a)(4) has stricter language than does the Alaska statute—the federal law requires disqualification when the judicial officer or spouse has a financial interest, "however small," in the subject matter of the litigation or in a party to the proceeding.[45] Because the federal statute explicitly states

---

**39.** *Reich,* 56 P.3d at 18.

**40.** *See id.* at 23–25. The record in that case reflected that NANA owned the Mine, that Teck Cominco operated it under a development agreement, that under the agreement NANA and Teck Cominco shared net profits, and that under the agreement the net profits to be shared could be reduced by litigation expenses and the payment of judgments in the absence of a finding that Teck Cominco was liable for gross negligence or willful misconduct. *See id.* at 20.

**41.** Now Alaska R. Civ. P. 47(c)(13).

**42.** *Reich,* 56 P.3d at 23.

**43.** *See* AS 22.10.190.

**44.** AS 22.20.020(a)(4).

**45.** 28 U.S.C. § 455(b)(4), (d)(4) (2006). Alaska's former Code of Judicial Conduct mirrored this language. *See* former Alaska Code of Judicial Conduct Canon 3 C(1)(c) (1973).

that *any* financial interest is reason for disqualification and the Alaska statute does not, the federal cases are not truly analogous.

 The Alaska Code of Judicial Conduct establishes standards for ethical conduct of judges and provides "a structure for regulating conduct through disciplinary agencies."[46] It is to be "applied consistently with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances."[47] Because a *de minimis* financial interest does not conflict with the right to have a judicial officer who is actually unbiased and who appears unbiased,[48] we agree with Judge Jeffery and hold that AS 22.20.020(a)(4) does not impose a more stringent standard for disqualification than does the Code when a judicial officer or spouse has a *de minimis* financial interest in the matter before the court.

Teck Cominco argues that nothing in the record supports the proposition that the relationship between NANA and Teck Cominco is the same now as it was at the time of *Reich* and, therefore, that Mitchell's allegations of financial conflict cannot be sustained. This argument is moot in light of our resolution of the recusal issue.[49] However, we take judicial notice of a January 2007 affidavit by the vice-president and general counsel of NANA in connection with another case[50] that has reached this court.[51] This affidavit describes the relationship between NANA and Teck Cominco in the same manner reflected in *Reich* and notes the significant employment and related financial impact of the Mine on NANA shareholders and the Northwest Arctic Borough. The affidavit further provides that (1) Mine royalties to NANA for 2008 are projected to exceed $250 million, over four times the 2007 royalties, although (2) sixty-two percent of the royalties are shared with other entities under the Alaska Native Claims Settlement Act. This suggests that the future stream of NANA shareholder dividends, as well as the value of NANA stock (notwithstanding current restrictions on transfer[52]), may increase substantially as a direct result of NANA's investment in the Mine.

 Canon 3 E(1) requires disqualification when "the judge's impartiality might reasonably be questioned...." While this requires disqualification when a judge or spouse has more than a *de minimis* interest in the outcome of a case, *financial or otherwise*,[53] that does not mean that such a *de minimis* interest can never give rise to a reasonable question about a judge's impartiality. In light of the information about greatly increased royalties from the Mine and the Mine's significant financial impact on NANA shareholders and the Northwest Arctic Borough, we remand for Judge Erlich's renewed consideration of Mitchell's request that he disqualify himself from this case. On remand Judge Erlich should consider and indicate whether his wife's ownership of NANA stock has a financial or other impact

**46.** Alaska Code of Judicial Conduct Preamble.

**47.** *Id.*

**48.** *See Amidon,* 604 P.2d at 577 (citing *Keel v. State,* 552 P.2d 155, 156 (Alaska 1976)) (holding that AS 22.20.020 embodies right to impartial tribunal).

**49.** Teck Cominco also argues that Mitchell's efforts to disqualify Judge Erlich below were untimely, that having failed below to rely on AS 22.20.020(a)(4) he cannot rely on it on appeal, and that Mitchell lacks standing to appeal the denial of recusal. In light of our resolution of the recusal issue, we need not address these arguments.

**50.** *See Drake v. Wickwire,* 795 P.2d 195, 197 n. 1 (Alaska 1990) (noting court may take judicial notice of pleadings filed in another case).

**51.** *Council of Alaska Producers v. Parnell,* Supreme Court Nos. S–13059/S–13060, Superior Court Case No. 4FA–07–02696 CI.

**52.** *See* 43 U.S.C. § 1606(h) (2006) (restricting alienation of Alaska Native Claims Settlement Act common stock and all inchoate rights, including rights to dividends and distributions); AS 13.16.705 (providing inheritance mechanism for ANCSA common stock while federal law against alienation is in existence).

**53.** *See* Alaska Code of Judicial Conduct Canon 3 E(1)(c)(i), (iii), (explaining circumstances requiring disqualification); Alaska Code of Judicial Conduct Terminology (defining *"de minimis interest"*).

on the Erlich household, *de minimis* or not, that would reasonably call into question his ability to serve as the trial judge in this case.[54]

## V. CONCLUSION

We REVERSE the superior court's implicit denial of Mitchell's Rule 56(f) request for a continuance because Mitchell met all of the requirements of the rule, and we therefore VACATE the grant of summary judgment ruling to Teck Cominco on Mitchell's discrimination claim. Because there are genuine issues of fact about the reasonableness of Teck Cominco's investigation and differences in discipline for sexual harassment, we also REVERSE the grant of summary judgment to Teck Cominco on Mitchell's contract claims and AFFIRM the denial of summary judgment to Mitchell on those claims. We VACATE the final judgment and award of attorney's fees and costs to Teck Cominco and REMAND to the superior court for further proceedings consistent with this opinion, including renewed consideration of Mitchell's request for judicial disqualification.

MATTHEWS, Justice, not participating.

---

**54.** The commentary to Canon 3 E(1) provides that a judge "should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." Alaska Code of Judicial Conduct Canon 3 E(1) cmt. Alaska Statute 22.20.020(b) likewise provides that a judge shall disclose reasons for disqualification at the commencement of the action. This strongly suggests that Judge Erlich should have disclosed his wife's NANA stock at the inception of this case, and his consideration of disqualification on remand should consider whether his prior non-disclosure has a bearing on whether his impartiality might reasonably be questioned.